UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 8-23-2010

------------------------------------------------------------

UNITED STATES OF AMERICA,

Plaintiff,

- v. —

DANIEL B. KARRON,

Defendant.

08 Civ. 10223 (NRB) (DFE)

------------------------------------------------------------

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT



D B Karron
*Pro Se*
348 East Fulton Street
Long Beach, NY 11561
Voice: 212 686 8748
Cell:   917 674 0828
Email: drdbkarron@gmail.com

Page 1 of 41

# Contents

1) Preliminary Statement ............................................................................................................... 7

2) Background .............................................................................................................................. 11

3) Argument ................................................................................................................................. 12

   Overview of Complaint Claims ................................................................................................ 12

   1st    Claim: FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(l)[Pre-FERA False Claim] ................. 12

   2nd    Claim: FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(2)[Pre-FERA False Record] ............... 12

   3rd    Claim: CONVERSION [of misappropriated funds to personal gain] ..................................... 12

   4th    Claim: UNJUST ENRICHMENT ...................................................................................... 12

   5th    Claim: FRAUD ............................................................................................................... 12

   6th    Claim: PAYMENT MADE UNDER MISTAKE OF FACT .................................................. 12

   Overview of Opposing Points of Argument ............................................................................. 13

   Point I.    Karron Overfunding and Cofounding render moot Plaintiff's claims. *Decl. of Dunlevy Ex. 1.* In main part the governments underlying accounting is false; being copied from Hayes, and or being made up. Karron's bona fide tax paid salary and project funding vitiate the allegations of fraud. 13

   Point II.    There exists no Common Law Fraud elements in the BEA conviction; The Plaintiff fails to aver the full particulars in the Complaint or Memorandum of Law. ............................................. 13

   Point III.    Incongruent Mens Rea Elements of § 666 BEA conviction and § 3729 FCA precludes § 3731 FCA Procedure for Statutory Collateral Estoppel. Summary Judgment by Res Judicata and Civil Collateral Estoppel are impossible. The single element of conviction, knowing misapplication of grant funds, without a finding of fraud, for purposes otherwise benefiting the Plaintiff are not the same issues, elements, allegations, or claims, or transactions required by the law. ........................... 13

   Point IV.    Monstrous Civil Penalties and Damages demanded (as much as $5M+) are 42 X the criminal restitution, significantly greater than the Campbell rule. The civil penalty is criminal. This is a constitutional challenge because it infringes on the Defendant's rights under the 5th Double Jeopardy and Due Process (Summary Judgment short circuits Due Process) , Eminent Domain (failure to Just Compensate Defendant for seized real and intellectual property), 8th Amendment (Cruel and unusual punishment s) ....................................................................................... 13

   Point V.    Other issues raised by Plaintiff and answered as space permits. ................................... 13

   Point VI.    Non Movants evidence is admissible at trial, must be considered as true for deciding eligibility of summary judgment, and, interpretation of law must be considered in light most beneficial to non-moveant; there is no remaining basis for Summary Judgment. ............................... 13

   Point I.    Karron Funding of Project makes all fiscal reporting errors harmless to Plaintiff. ................... 14

a)   Karron's Salary ................................................................................................ 14

b)   Karron's contribution ...................................................................................... 14

c)   Overfunding and FCA ....................................................................................... 14

Point II.   No Common Law Fraud Basis ...................................................................... 15

A.   Elements of fraud ................................................................................................ 15

i.   Definitions of Fraud .......................................................................................... 15

ii.   The particulars of Common Law fraud consist of nine elements ................... 16

B.   Plaintiff does not specify required elements of fraud to allege Common Fraud. .......... 16

i.   Common Law Estoppel cannot apply without full particulars. ........................ 16

ii.   "Benefit of the Bargain" fraud damages. ........................................................ 17

C.   CUNY CISDD Subcontract: Option or Obligation? ............................................. 19

1.   CUNY CISDD NYUMC and KEY CASI TEAM MEMBERS ....................................... 21

Point III.   Incongruent *Mens Rea* Elements between Criminal and Civil Statutes Preclude Collateral Estoppel and Summary Judgment ................................................................. 21

a)   Taking refuge in ALLISON Wonderland ............................................................ 22

b)   FERA Retroactively Amends FCA2009 .............................................................. 23

c)   FERA Retroactivity Unconstitutional ................................................................ 23

d)   FERA retroactivity Applies to Claims, Not Cases .............................................. 23

e)   Retroactivity, Legally False from Kirk v. Schindler also false .......................... 24

f)   FCA Claims Disputed ......................................................................................... 25

g)   31 USCS § 3731 (e) FCA Statutory CE Procedure ............................................. 25

h)   The Mickman and Lamanna Limitation ............................................................ 26

i)   Liability Does Not Equal Damages .................................................................... 27

j)   The Defendant's Conviction under 18 U.S.C. §666(a)(1)(A) [BEA] .................... 28

a)   2. Intent to Defraud Is Not An Element Of Section 666(a)(1)(A) ..................... 29

b)   Section 666(a)(1)(A) prohibits embezzling, stealing, obtaining by fraud, converting, or intentionally misapplying funds. The first four prohibitions cover any possible taking of money for one's own use or benefit. Intentional misapplication, in order to avoid redundancy, must mean intentional misapplication for otherwise legitimate purposes. ................................... 30

Point IV.   Monstrous Civil Penalties and Damages Unconstitutional ........................... 32

1.   A 42 times damages and punitive ratio ............................................................ 32

2.   Double Jeopardy and the BEA and the FCA ...................................................... 32

3.   Forensic Accounting does not support the Plaintiff's loss contention ............. 34

4.   The TENNENBAUM precedent ......................................................................... 34

5.   Large Punitive Damages and Fines CASE LAW ............................................... 34

Point V.   Other Issues Raised and Answered .................................................... 35

s)   OMB Circulars advice to Agencies ............................................................... 35

t)   Revision of budget and program plans: 15 CFR §14.25 .............................. 35

u)   ATP was tacitly or minimally responsive. ................................................... 36

1.   Cooperative Agreement requires CASI Substantial Involvement................... 36

a)   Kickoff Memo from Orthwein *(Karron Declaration Exhibit 5)* shows early significant involvement. ............................................................................................ 36

Point VI.   No grounds for Summary Judgment ................................................. 37

1)   No Uncontested Material Issues for Partial Summary Judgment. ................. 38

The auditors conspired to make materially false audit in ignoring Karron's contribution................. 39

Inventory of Facts, Claims, Refutations of Facts, Arguments to Claims ............................. 40

4)   Conclusion; No grounds for Civil or FCA Statutory Estoppel, Full or Part Summary Judgment. ...... 40

# Table of Authorities

## Cases

31 U.S.C. § 3729 ............................................................................................................. 25

Allison Engine Co. v. U. S. Ex. rel. Sanders, No. 07-214, 553 U.S. (2008) ................................. 22

Allison Engine Co. v. U. S. ex. rel. Sanders, No. 95-cv-970 6th Cir(2009 ................................. 23

Allison Engine Co. v. U. S. ex. rel.Sander (No. 07-214) 471 F. 3d 610 ................................. 38

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) ................................................. 37

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ..................................................... 38

Barrett v. Holland & Hart (1993), 845 P.2d 714, 717 .............................................................. 16

Batten v. Watts Cycle & Marine (1989), 783 P.2d 378, 381, cert. denied, 494 U.S. 1087, 110 S.Ct. 1826,
     108 L.Ed.2d 955 (1990) .................................................................................................. 16

BMW of North America, Inc. v. Gore (1996) ......................................................................... 33

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ...................................................................... 37

First National Bank of Arizona v. Cities Service Co.391 U. S. 253,391 U. S. 289(1968) ............... 37

Hopper v. Solvay Pharms, 588 F.3d 1318, 1327 n.3, 2009 cert. pet'n filed, 78 U.S.L.W. 3531 (U.S. Mar. 3,
     2010) (No. 09-1065); ..................................................................................................... 24

Lee v. Armstrong 798 P.2d 84, 87; Batten, 783 P.2d at 380-81. (1990) ................................... 16

Matsushita, 475 U.S. at 586, (1986) ................................................................................... 37

Mikes v. Straus, 274 F. 3d 687 - Court of Appeals, 2nd Circuit 2001 ......................................... 24

Morlan v. Kelly, No. 2009-UP-002, SC Supreme Court, 2009 ................................................... 16

Schnellmann v. Roettger, 373 S.C. 379, 382, 645 S.E.2d 239, 241 (2007 .................................. 16

Simon v. San Paolo U.S. Holding Co., Inc. (2005) 35 Cal. 4th 111182 ....................................... 33

SIMON v. San Paolo, 35 Cal. 4th at 1182 ............................................................................. 10

SONY v. TENNENBAUM (2010), see Karron Declaration Exhibit188. ............................................ 34

STATE FARM MUT. AUTOMOBILE INS. CO.V. CAMPBELL (01-1289) 538 U.S. 408 (2003)P.3d ............... 33

Taylor v. State Compensation Insurance Fund, 175 Mont. 432, 913 P.2d 1242 (1996) ................... 16

TROP v DULLES 356 U.S. 86 (1958) ..................................................................................... 34

U S v Karron BRIEF FOR THE U. S. OF AMERICA July 21, 2009 Karron's Declaration Exhibit 6 ............ 7

U S v. Karron UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT 08-5287-cr of October 7,
     2009 ............................................................................................................................ 7

U S. v. Sazama,88 F. Supp.2d 1270 (D. Utah 2000) .............................................................. 26

U S.v. Kanelos, 1994 WL 148655 (N.D. Ill. April 20, 1994) ..................................................... 26

U. S. ex rel. Parato v. Unadilla Health Care, No. 5:07-CV-76(HL), 2010 WL 146877, at * 4 n.4 (M.D. Ga.),
     2010) ........................................................................................................................... 24

U. S. ex rel. ROGER L. SANDERS, et al., -v- ALLISON ENGINE COMPANY, INC., et al.,, Case No. 1:95-cv-970
     (U. S. DISTRICT COURT SOUTHERN DISTRICT OF OHIO WESTERN DIVISION AT DAYTON October 27,
     2009) ........................................................................................................................... 23

U. S. ex. rel. Kirk v. Schindler Elevator 601 F. 3d 94 (2d Cir. 2010) .......................................... 24

U. S. v. Bajakajian, 524 U.S. 321 (1998) ............................................................................. 10

U. S. v. Bajakajian, 524 U.S. 321 (1998), .............................................................................. 34

U. S. v. Halper, 490 U.S. 435, 448-49 (1989).143 ....................................................................... 33

U. S. v. Karron (2008) Amended Judgment in a Criminal Case. Karron Declaration Exhibit 65 ................. 40

U. S. v. KARRON Civil Complaint, 08 CV 10223 U. S. SDNY, November 24, 2008. ...................................... 24

U. S. v. Karron, On Appeal, Brief for the United States(2009) at Point 1(B)(2).......................................... 38

U. S. v. Lamanna, 114 F. Supp. 2d 193 (E.D.N.Y. Sept. 26, 2000)............................................................. 26

U. S. v. Mickman, 1993 WL 541683 (E.D. Pa. Dec. 22, 1993), 52 F.3d 318 (1995)................................... 26

U. S. v.Aguillon, 628 F.Supp.2d 542 Dist. Court, D. Delaware , June 24, 2009 .......................................... 24

U. S. v.Science Applications International Corp., 2009 WL 2929250, D.D.C. Sept. 14, 2009....................... 24

U.S. Ex. rel. Longhi v. Lithium Power Techs. Inc.,513 F.Supp.2d 866 (S.D. Tex. 2007), 2008 WL 62207(S.D.

     Tex. Jan. 3, 2008)............................................................................................................................... 21

## Statutes

15 § 278n. ............................................................................................................................................. 32

15 CFR § 14.25 (4) ................................................................................................................................. 35

15 CFR §14.25(m)................................................................................................................................. 36

18 U.S.C. § 666 ..................................................................................................................................... 29

18 U.S.C. § 666(a)(1)(A).......................................................................................................................... 29

18 U.S.C. §666(a)(1)(A)............................................................................................................................ 7

18 USC §666(a)(1)(A)............................................................................................................................... 8

31 U.S.C § 3729(a)(1) .............................................................................................................................. 8

31 U.S.C § 3729(a)(2) .............................................................................................................................. 8

31 U.S.C. § 3731(e).............................................................................................................................. 25

31 U.S.C. § 3731(e).............................................................................................................................. 22

31 U.S.C. 3729 et seq ............................................................................................................................ 23

31 USC § 3731 (e) ................................................................................................................................... 9

31 USC § 3731(e).................................................................................................................................... 9

31 USCS § 3729 As Amended 1986 ......................................................................................................... 8

31 USCS § 3729(a)(2).......................................................................................................................... 22

## Other Authorities

ATP Proposal Ex. 14 Instructions, 2001................................................................................................ 36

OMB Circular A-122 .............................................................................................................................. 35

OMB Circulars A-21................................................................................................................................ 35

Public Law No: 111-21 ........................................................................................................................... 23

Public Law No: 111-21, Section 4(f)(2)................................................................................................. 23

## Treatises

Brody, Steven G. and Chow, Gary K., November 16, 2009 New York Law Journal. Unlikely Source May Be
     Raising Summary Judgment Bar High Court's three pleadings rulings begin to impact......................... 37

Cooper, Neal A.  (1995-1996) Third Party Liability or the False Claims Act: It Is Time for Consultants to
     Pay the Price for Their Bad Advice 29 J. Marshall L. Rev. 923 ............................................................. 12

Federal Summary Judgment Doctrine: A Critical Analysis; Louis, Martin B. 83 Yale L.J. 745 (1973-1974). 16

Smith, Lionel D.; (1997)The law of tracing CLARENDON PRESS • OXFORD ................................................ 40

## 1) Preliminary Statement

The Defendant opposes the Plaintiffs' motion for a summary judgment based on significant issues of specific material fact in the Defendant's Opposing 56.1 Statement of Material Fact and relevant statutes and case law.

The law of conviction here are not vague: a conviction under 18 U.S.C. §666(a)(1)(A) (Bribery, Embezzlement Act or "BEA") does not require a finding of fraud as convincingly argued by the Government in its opposing brief to Karron's Appeal[1]. The U. S. Court of Appeals for the Second Circuit has spoken as well: The element of conviction under BEA is one of "Knowing Misapplication of Funds outside of authority to do so". The Defendant is not claiming innocence in this criminal matter, and has accepted the final Judgment of the Courts[2].

The total spending on the project, direct and indirect, federal and non-federal share, was $1,700,000, of which the Defendant contributed $350,000. If the project is restarted tomorrow, no budget changes would be required to complete the project. The Prosecution also could not have said it better "Your Honor, because almost every single expenditure has some benefit to the research …"[3]"… then there would be no loss at all,…" [4]

The allegation of common law fraud because the Defendant did not subcontract in the first year of the project with CUNY CISDD is preposterous; there was no contractual obligation

---

[1] U S v. Karron BRIEF FOR THE U. S. OF AMERICA July 21, 2009 Karron's Declaration Exhibit 6
[2] U S v. Karron U. S. COURT OF APPEALS FOR THE SECOND CIRCUIT 08-5287-cr of October 7, 2009.
[3] Sentencing Transcript Page 22 Line 22.
[4] Sentencing Transcript Page 23, Line 10-22

to do so. The cooperative agreement does not specify a subcontract start date, duration, or any details that could be remotely make it an obligation: it is permission to do so, not a specification to do so. When CASI won the award, to everyone's surprise[5], The CUNY faculty rejected working through CUNY CISDD; there was no economic incentive. They would not have earned an increment to work for CASI's ATP project. ATP frowns on excessive subcontracting. *Karron Declaration Exhibit 154, ATP Proposers Conference Video at time 2:28:27.* Instead they consulted directly with CASI, with full agreement of CUNY, and NIST, directly with CASI. *Karron Declaration Exhibit Group 4, Ex. 12 through 32.*

A 18 USC §666(a)(1)(A) BEA misapplication of funds conviction is not a qualifying 31 U.S.C § 3729(a)(1) and 31 U.S.C § 3729(a)(2) False Claims Act [FCA] fraudulent false transaction as defined by the version of the statute effective at the date of the alleged claims. A "BEA" conviction does not, *prima facie,* guarantee that all, or any, of the requisite elements for a FCA conviction are met[6]. In the Defendant's conviction, the Jury did not specify any particular specific transactions on which to base its finding of a restitution amount; only ill-defined classes of transactions taken from GX114[7], without specific reference back to a schedule revealing individual transactions: therefore there are no transactions identified as requisite element for FCA liability. **GX114 has problems**. The Criminal Court complained bitterly about the lack of definition, precision, and accuracy of the numbers and their classification on GX114, including and the lack of backup schedules showing specific transactions used for each class. That is because there is no backup. There is no way to "reverse engineer" these numbers. There is no

---

[5] *Karron Declaration Exhibit 4*
[6] 31 USCS § 3729 As Amended 1986, Karron Declaration Exhibit 136,
[7] *Karron Declaration Exhibit 33*

way to identify the transactions on which these sums are totaled.  The Court could not have said it better: "**Look at that [GX 114].  This is a mess**"[8].

31 USC § 3731(e)[9] False Claims procedure for invoking the statutory bar of Estoppel is not automatically triggered because of the lack of any specific "transaction" element cited as fraudulent in the criminal case. The Plaintiff here brings forward some "'at least twenty'"[10], not previously alleged as fraudulent in the criminal case [11].  The **Defendant disputes, as a matter of fact, that the SF 269A short form, or SF270 submitted are knowingly false**. The documents are as fraught with uncaught technical errors, and other mistakes, despite being vetted, redacted and initialed by 'HS'.  Therefore, the documents, amongst other reasons, are meaningless.  The Defendant clearly did not know what he was doing, and HS, or whoever was reviewing the forms, did not care enough to bounce them back for revision and correction.  Indeed, there are enough arithmetic and math errors on every step of the procedure on both sides to obviate anyone "knowing" anything at all.  Clearly, ATP did not think these important enough to hold up progress. *Karron Declaration Exhibit 161, ATP Audit Reports Missing.*  The Defendant submits "ground truth" verified figures prepared by the Defense forensic bookkeeper who has thoroughly and completely analyzed CASI spending.  The Defendant disavows the unauthorized revisions of the SF269 Long Form made in good faith by her then business managers Bob Benedict and

---

[8] Sentencing Transcript Page 16 Line 14-15, Karron Declaration Exhibit 31
[9] 31 USC § 3731 (e) [Pre FERA] Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the U. S. in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall **estop** the defendant from denying the essential elements of the offense in any action which involves the **same transaction** as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730. [Emphasis Added]
[10] The SF272 forms were voided in Amendment 4, and 4 SF269. See Defendants 56.1 response to Plaintiff's Paragraph #24 regarding counting unique and qualifying claim documents.
[11] Some 4 SF269 documents being unauthorized revisions of previous submitted SF269(a) forms by possibly well-meaning CASI business staff while Karron was in Canada. See Karron Declaration Exhibit 128 and Trial Transcript Pages 1313 *et seq.* starting at line 8.

auditor Hayes[12], who made exculpatory affirmations about Karron as they submitted yet even more erroneous and a different replacement forms on Karron's behalf.

Finally, the forms in question, SF 269A and SF270[13], are not unique qualifying fraud claims, but rather quarterly financial forms and requests for advances that are a cash machine receipt, showing balances remaining and spent, rather than forged checks or fraudulent invoices or reimbursement demands. The money was in the bank, it was already allocated, and it was already sequestered for the project. There was no *quid-pro-quo* claim for payment, no *sine-qua-non* signature for any particular cash advance or drawdown[14]. Karron spent the money to the best of her knowledge and ability, with the full knowledge, explicit and implicit and tacit blessing of the ATP management. The Defendant's main evidence is forensic analysis of hard numbers taken from the criminal trial. The Plaintiff's exhibits are innumerate. The numbers do not add up, are made up, and it took until now to prove it.

Plaintiff seeks punitive damages that are so enormous being 42 times ratio of punitive fines to restitution, so clearly and significantly greater than the Campbell standard for "Single Digits Ratio Rule the Constitutional issues cannot be avoided by Summary Judgment. *Karron Declaration Exhibit .205 and 211.* U. S. v. Bajakajian, 524 U.S. 321 (1998), SIMON v. San Paolo, 35 Cal. 4th at 1182 STATE FARM MUT. AUTOMOBILE INS. CO.V. CAMPBELL (01-1289)  538 U.S. 408 (2003)P.3d

The Defendant has raised significant matters of material fact in opposition to the Plaintiffs' Statement of Material Facts.  If the Plaintiff wishes to challenge these facts, then it is

---

[12] Karron Declaration Exhibit 128
[13] Form SF272 was voided by Cooperative Agreement 4. *Declaration of Karron Exhibit  8.*
[14] For a counter example, consider a construction loan payable, where a payment is contingent on submission of invoices and proof of work done.

the job of the jury, as finders of fact.  Without Mistake of Fact (obviated by correct fiscal facts), and full allegation of Fraud, no remaining unchallenged matters that can be summarily judged without trial.

## 2) Background

In May 18 2001, the Defendant, then an adjunct faculty member at the City College of the City University of New York (CCNY), and Founder/President of Computer Aided Surgery, Inc. (CASI) attended a faculty solicitation for ATP proposals given my Marc Stanley, ATP Program Director, at the CUNY Graduate Center on 34th Street and 5th Avenue.  *Karron Decl. Exhibits 152, 100, 9, 24.* Stanley suggested to Karron that he attend the 2001 NIST ATP Annual Meeting in Baltimore.  He (then) actively participated in the June 3rd convention and he had extensive discussion with various ATP personnel about how to win and manage an ATP grant for CASI.  .

Karron wrote and submitted a winning four "Gate" proposal to ATP that resulted in the October 1 2001 award of a cooperative agreement for 2 million dollars direct funding for Karron's DMT image analysis algorithm.  The novel concept was to do a definitive "map", much like the Human Genome Project "map", of the Visible Human Project Data, and to develop the idea of 'computer anatomy and surgery' a goal to which Karron is committed to even to this day.

The 9/11/2001 attacks here in NYC caused many people to rethink their lives.  Longtime Karron / CASI accountant Jill Feldman C.P.A. decided to retire from accountancy and sold her practice to Joan Hayes C.P.A in the winter of 2001.  Hayes thought she had much experience with audit, corporate accountancy, and the federal cost principles. *Karron Declaration Exhibit 42, 111,112,113.* As it turned out, Hayes was perhaps the worst accountant ever to meddle in a

business and government project. *Karron Declaration Exhibit 40,41,126, 127.* She wore too many hats; she lacked even a pretense of auditor independence. She gained the confidence of Karron **and** the Department of Commerce and then proceeded to make a train wreck of an otherwise promising research project and career[15]. Hayes lied to Karron, lied in her audit of CASI, lied to the ATP, OIG, and IRS Special Agents investigating ATP payroll taxes from which all that remains are IRS tax liens on Karron. *ibid*

### 3)  Argument

**Overview of Complaint Claims**

The central allegation of the government six claims made November 24, 2009[16] are founded in elements of common law Fraud and "Benefit of the Bargain" theory.

    1st  Claim: FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(l)[Pre-FERA False Claim]
    2nd  Claim: FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(2)[Pre-FERA False Record]
    3rd  Claim: CONVERSION [of misappropriated funds to personal gain]
    4th  Claim: UNJUST ENRICHMENT
    5th  Claim: FRAUD
    6th  Claim: PAYMENT MADE UNDER MISTAKE OF FACT

The central element of fraud in First, Second and Fifth Claim above requires the Plaintiff to aver  full FRCP 9(b) particulars and all of the nine elements of each instance of alleged fraud. Claims Fraud targeted by the False Claims Act (FCA) requires establishment of which version of the statute the alleged claim violates. *Karron Declaration Exhibits 136, 170, 207, 208, 209.* Conversion requires funds tracing *ibid Ex. 215*, as does Unjust Enrichment. *ibid Ex. 214* Mistake of fact requires identification of the exact facts relied upon by ATP are actually proven false. *Ibid Ex. 210.*

---

[15] Cooper, Neal A.  (1995-1996) Third Party Liability or the False Claims Act: It Is Time for Consultants to Pay the Price for Their Bad Advice 29 J. Marshall L. Rev. 923
[16] Karron Declaration Exhibit 69

### Overview of Opposing Points of Argument

Point I.       Karron Overfunding and Cofounding render moot Plaintiff's claims. *Declaration of Dunlevy Exhibit 1.* In main part the governments underlying accounting is false; being copied from Hayes, and or being made up.  Karron's bona fide tax paid salary and project funding vitiate the allegations of fraud.

Point II.       There exists no Common Law Fraud elements in the BEA conviction; The Plaintiff fails to aver the full particulars in the Complaint or Memorandum of Law.

Point III.       Incongruent Mens Rea Elements of § 666 BEA conviction and § 3729 FCA precludes § 3731 FCA Procedure for Statutory Collateral Estoppel.  Summary Judgment by Res Judicata and Civil Collateral Estoppel are impossible. The single element of conviction, knowing misapplication of grant funds, without a finding of fraud, for purposes otherwise benefiting the Plaintiff are not the same issues, elements, allegations, or claims, or transactions required by the law.

Point IV.       Monstrous Civil Penalties and Damages demanded (as much as $5M+) are 42 X the criminal restitution, significantly greater than the Campbell rule.  The civil penalty is criminal.  This is a constitutional challenge because it infringes on the Defendant's rights under the 5th Double Jeopardy and Due Process (Summary Judgment short circuits Due Process) , Eminent Domain (failure to Just Compensate Defendant for seized real and intellectual property), 8th Amendment (Cruel and unusual punishment s)

Point V.       Other issues raised by Plaintiff and answered as space permits.

Point VI.       Non Movants evidence is admissible at trial, must be considered as true for deciding eligibility of summary judgment, and, interpretation of law must be considered in light most beneficial to non-moveant; there is no remaining basis for Summary Judgment.

**Point I.**  **Karron Funding of Project makes all fiscal reporting errors harmless to Plaintiff.**

### a) Karron's Salary

The ATP project was co-funded and over funded by the Defendant  The total cost of the project is $1,524,264, of which the Federal Share is $1,345,500 and the CASI contribution was $178,764.  The Government cites salary figures ranging from a low of $ 35,293.58. [17][18], $175,000 (*Hayes audit*), $200,488(*OIG*), to $253,913 from the CASI Payroll Tax Returns prepared by Hayes.  Hayes prepared the Defendants 2002 Tax return, but abruptly quit and it was completed by Solomon and Schwartz[19]  Finally, completed forensic analysis shows Karron's total Tax Paid salary for the entire project period of  $334,004.12 in the *Declaration of Dunlevy Ex. CAC 291*, mid page right.

### b) Karron's contribution

Karron has the right to fund her grant out of her tax paid salary.  This is not 'double dipping'[20]. because it is *bona fide* after tax paid funds. *Dunlevy Decl.*

### c) Overfunding and FCA

---

[17] THE COURT: She[RILEY] has got a salary category.  She shows it.  Go on a couple of pages.  Payroll, next page, $35,293.58.
*Sentencing Transcript Page 9 Line 18-19.*
[18] MR. RUBINSTEIN: and you see his payroll checks which I put into evidence as P-1 through P-6, where his total amount for the year is about $35,000. Ask yourself, he gets $175,000, how does he only have $35,000?
*Trial Transcript Page 1293 Lines 20-24*
[19] Hayes completed Karron's 2002 tax return in July 2003, but refused to file it; she returned it to Karron but signed the extension request and completed the W2 forms before she "submitted" the ATP audit report in August 2003.
*Karron Declaration Exhibit 110.*
[20] *Trial Transcript Page 1066 Line 22 et seq.* Benedict Cross, See *Karron Declaration Exhibit 57.*

Because the project was overfunded, the government sponsor cannot be harmed.  The funding reports that contains harmless errors to NIST but could only "harm" Karron by understating Karron's contribution.  Clearly, if Karron had not contributed to the project, then the first dollar of indirect costs might be problematic. *Dunlevy Decl. Ex. BAC-301* shows Karron made significant contributions, out of after tax salary.  By Karron's turning back so much after tax salary, there is no liability for NIST being harmed by understated total grant spending. There is adequate 'slop' in the gears benefiting NIST, such that the errors in the 'false' statements do not materially harm the government sponsor in any way.  The alleged "56.1" claims of Paragraph #30 reflect GX114.  The issues raised are matters of fact and math, not law.  GX114 reclassified rent as Salary by ATP.

Point II.    No Common Law Fraud Basis

## A. Elements of fraud

i.    Definitions of Fraud

Fraud[21] is"A knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." [22][23]  Federal Rules of Civil Procedure, Rule 9(b) states in relevant part:  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity".  The rule states that to allege a fraud or mistake, a party must state "with particularity" the circumstances which would constitute the fraud or mistake, failure to do so explicitly is grounds for dismissal of the charge despite overwhelming evidence.

---

[21] Black's Law Dictionary, 5th ed., by Henry Campbell Black, West Publishing Co., St. Paul, Minnesota, 1979.
[22] Black's Law Dictionary, 7th ed., by Bryan A. Garner, editor, West Group, 1999
[23] Law.com Dictionary http://dictionary.law.com/Default.aspx?selected=785. Retrieved Aug 13, 2010

ii.   The particulars of Common Law fraud consist of nine elements[24][25][26][27][28]

1. a representation of an existing fact;
2. its materiality;
3. its falsity;
4. the speaker's knowledge of its falsity;
5. the speaker's intent that it shall be acted upon by the plaintiff;
6. plaintiff's ignorance of its falsity;
7. plaintiff's reliance on the truth of the representation;
8. plaintiff's right to rely upon it; and
9. consequent damages suffered by plaintiff.

Fraud can never be presumed but must be proved by a preponderance of the evidence.[29] FRCP Rule 9(b) requires that each element be pled with particularity and be proved with clear, cogent, and convincing, very probable evidence to establish a claim of fraud.  This includes False Claims Act (FCA) liability, as derived from common law fraud, as a specialized kind of fraud.

B.  Plaintiff does not specify required elements of fraud to allege Common Fraud.

Fraud can never be blithely presumed; even in the shadow of the Defendant's criminal conviction.  Failure of the Plaintiff to meet their burden of proof in all particulars is grounds to deny Summary Judgment[30].  The single element of the BEA conviction is not the same as particular nine requisite elements required for civil fraudulent liability.

i.   Common Law Estoppel cannot apply without full particulars.

---

[24] http://en.wikipedia.org/wiki/Fraud
[25] Morlan v. Kelly, No. 2009-UP-002, SC Supreme Court, 2009
[26] Schnellmann v. Roettger, 373 S.C. 379, 382, 645 S.E.2d 239, 241 (2007)
[27] Taylor v. State Compensation Insurance Fund, 175 Mont. 432, 913 P.2d 1242 (1996)
[28] Lee v. Armstrong 798 P.2d 84, 87; Batten, 783 P.2d at 380-81. (1990),
[29] Barrett v. Holland & Hart (1993), 845 P.2d 714, 717 (citing Batten v. Watts Cycle & Marine (1989), 783 P.2d 378, 381, cert. denied, 494 U.S. 1087, 110 S.Ct. 1826, 108 L.Ed.2d 955 (1990)).
[30] Federal Summary Judgment Doctrine: A Critical Analysis; Louis, Martin B. 83 Yale L.J. 745 (1973-1974)

Without a complete allegation of the full nine particulars, enumerated for each claim of fraud, Common Law Estoppel cannot be applied.  Even if a allegation of full particulars been provided in the preceding criminal case, any non-movant answer that raises substantive issues of fact would be sufficient to overcome Estoppel.

The Third Circuit Court of Appeals has adopted the following test for civil collateral estoppel from the first Restatement of Judgments:

> (1) the issue sought to be precluded must be the same as that involved in the prior action;
> (2) that issue must have been actually litigated;
> (3) it must have been determined by a valid and final judgment; and
> (4) the determination must have been **essential to the prior judgment**.[31] [emphasis rearranged]

This standard fails in the Plaintiff's civil case here because it contradicts the Plaintiff's own argument against the Defendants criminal appeal specifically that Fraud was not proved or a required element for the Defendant's criminal BEA conviction.  The Plaintiff cannot have it both ways, especially now that the second circuit court of appeals have made a final ruling.  If the Plaintiff has argued, and the courts agreed and upheld the Defendants conviction without a finding of Fraud, then the Plaintiff it themselves are estopped from referring to the criminal case for elements of Fraud to estop.  It was not an element in the criminal trial and, at the very least, must be proven *de novo*, not by Summary Judgment

    ii.    "Benefit of the Bargain" fraud damages.

The measure of damages in fraud can be computed by the "benefit of bargain" rule, which is the difference between the value of the property had it been as represented, and its

---

[31] Bower v. O'Hara, 759 F.2d 1117, 1125 (3d Cir. 1985)

actual value. *Karron Declaration Exhibit 213*.  The Plaintiff attempts to argues here that because the defendant's acts had not resulted in a "tangible benefit to the government and the intangible benefit is impossible to calculate." a full refund is due. *Ibid Ex. 70, See Longhi below*. This is not true in this case because the Cooperative Agreement explicitly prices out incremental milestones. *Karron Declaration Exhibit 1*.  Because all of the milestones in progress were achieved prior to funding suspension and beyond, the 5th circuit argument of 'intangible product' does not hold. Six detailed quarterly technical reports were submitted and accepted. *Karron Declaration Exhibit Group 3, Ex. 15-20*. The work product was a quarterly technical report and a tangible milestone, achievement of which was never questioned, reported in the quarterly technical reports, and make concrete the abstract nature of the research.  Therefore for each milestone payment was due and duly paid, as opposed to a grant activity with no deliverable product, for which only costs are reimbursed. Additional benefit accrued to the government with each paper research published. *Karron Decl. Statements*. The state of the art was advanced, and other colleagues around the world built on the research foundation laid here. *Karron Declaration Exhibit Group 21, Ex. 201 in particular*.

The *Longhi*[32] District court identifying what it considered a "novel issue of law," addressed for the "proper way to calculate damages for a fraudulently induced research grant." Only there is no fraud proven in the Defendant's case.  Without a finding of fraud, the *Longhi* analysis fails here, despite the Plaintiff's criminal conviction.

The FCA Relator, Alfred Longhi, left the company 2002 because of his observations "pertaining to duplicative research and work, and the fraudulent billing related to that duplicative

---

[32] U.S. ex. rel. Longhi v. Lithium Power Techs. Inc.,513 F.Supp.2d 866 (S.D. Tex. 2007), 2008 WL 62207 (S.D. Tex. Jan. 3, 2008), cert granted

research and work." Ultimately, the U.S. Attorney's Office elected not to pursue criminal charges against LPT or any of its employees. If the government wishes to pursue its theory of damages, it must do so in a civil trial, and not attempt to make a cheap win of monumental punitive damages by Summary Judgment. Implication of unlimited culpability for all the myriad allegations is unwarranted and unfounded by the fact found at the criminal trial.

The Plaintiff alleges that because "agency anticipates substantial involvement, the agency is to use a cooperative agreement". They imply Karron lied and hid substantial issues from ATP management. **The only issue that Karron hid was her transsexuality, because it was not an appropriate matter for a research sponsor.** However, ATP seemed interested in many matters of CASI business that the PI felt were not its business. The evidentiary trail shows Karron discussing each and every material issue with the ATP management team, starting with the Gate III oral examination, Gate IV cooperative agreement vetting, the Kickoff Orthwein Agenda memo, and the Gurfein conversion to contractor request denial being honored. Problems started when Hayes started interfacing with ATP and meddling with both sides.

## C. CUNY CISDD Subcontract: Option or Obligation?

The Plaintiff seems imply that because the cover sheet 3 of the proposal Gate 1 cited CUNY CISDD as subcontractor, CASI was obligated to subcontract with CUNY CISDD as a material specification for the project. The justifications cited on the form are the Key Faculty and mathematical and software talent that such a subcontract would bring to bear on the project, to the benefit of the government. That CASI did not, in the first 18 months of the project, execute a subcontract with CISDD might conceivably be taken as evidence of a material false statement in its Gate 1 proposal. Further, conceivably it might be that the ATP SEB evaluators