materially relied on CASI suggestion of a subcontract with CUNY to induce it to fund CASI.  By CASI not fulfilling its implied "promise of a CISDD subcontract", an observer ignorant of the facts of the situation might conclude that CASI deprived the project of the mathematical and software talent only available from CISDD as a sole source of this resource.  Because of this, the plaintiff argues that the entire funding for the ATP project would be better spent on a more trustworthy steward, and that CASI, by its fraud, deprived a more worthy recipient from doing the research on DMT ATP desired funded.  Like *Ex. rel Longi,* the implication is 'you lie, you lose- it all'.

However, there was no lie; the proposal cover sheet was not a specification to CASI, it was an option. ATP was apprised of the issue, and gave consent.  CUNY CISDD was not *sine qui non* to the project, the key people were.  CISDD was immaterial to the project. The venue was immaterial.  It was the involvement of the key faculty and students who participated directly with CASI, some paid, many not. Karron was CUNY faculty and had full access to CUNY without CISDD, and the CUNY faculty and students made use of ATP funding and computer resources through CASI.  The government got the better of the bargain for less cost as there was no CISDD overhead to be paid.

The ATP proposal cover sheet page 3 calls out a subcontract with CISDD for  $420,000. It does not specify a start date or duration or other actionable details.  It does not say "not to exceed $240,000", nor does it obligate that amount to CISDD in the approved budget(s).  In the Defendant's "56.1" response to Paragraph #31, it becomes clear from the *prima facie* facts that there was no contractual obligation to engage CUNY CISDD at the onset of the project, and that the key CUNY faculty did in fact replace CUNY CISDD by consulting directly for CASI.

1. CUNY CISDD NYUMC and KEY CASI TEAM MEMBERS

. As soon as the project was funded, the CUNY and NYUMC faculty team members clamored to contract directly with CASI.  This issue was presented at the Kickoff meeting at NIST in November. *Karron Declaration Exhibit 5.*  All of the 'Key CASI Team Members' were engaged directly to CASI, instead of as CUNY chattel.  Both Cox and Wolberg obtained requisite departmental and institutional permissions. *Ibid Exhibit Group 4.*  There was no change in the budget line item assignment, and key team members were unchanged except for the mitigation of CUNY overhead.  There was no need to remove the subcontractor proposal cover page to limit future subcontract options, thought replacement pages were submitted *Ibid Exibit Group 4 Exh 22.*

In *U.S. Ex. rel. Longhi v. Lithium Power Techs. Inc.,513 F.Supp.2d 866 (S.D. Tex. 2007), 2008 WL 62207(S.D. Tex. Jan. 3, 2008),,*Defendant had multiple simultaneous SBIR grants and conducted billing fraud.  It also misrepresented "cooperative arrangements" that it claimed to have for lab space, a material misrepresentation.  They were doing electrochemical research and needed wet lab space.  Their research could not be done in a home office.  CASI's could.  CUNY CISDD was not material to the conduct of the research; it was not material in the cooperative agreement award,  it was not a secret, it was approved by ATP, and was not an inducement to ATP to fund CASI. *Karron Declaration Exhibit Group 4.*

Point III.     Incongruent *Mens Rea* Elements between Criminal and Civil Statutes Preclude Collateral Estoppel and Summary Judgment

The underlying elements of the Defendant's criminal conviction under 18 U.S.C.

§666(a)(1)(A) [BEA] for knowing misapplication of **funds** are different and distinct from the

31 USCS § 3729(a)(2) [FCA] application standard for **false claims**, precluding 31 U.S.C. §

3731(e) statutory Collateral Estoppel (CE) for "same transactions".

The criminal conviction did not identify a required element of specific transactions, only a

derived category of spending[33] without explicit reference to specific identifiable candidate

'same transactions' 31 U.S.C. § 3731(e). Because no specific knowing fraudulent claim was

identified at least one material false claim would have to be proven in a trial.  Finally the

court must examine the contradictions between the applicable FCA, BEA and ATP statutes

and their legislative intents .

### a)  Taking refuge in ALLISON Wonderland

The Allison Engine Co. v. U. S. Ex. rel. Sanders, No. 07-214, 553 U.S. (2008) by the

Supreme Court of the United States challenged previously accepted broad reach of the elements

of the FCA as unconstitutional.  The Supreme Court held that plaintiffs under the ALLISON case

ruling of FCA must prove that the false claim made specifically "intended 'to **defraud** the

Government.' ".  Additionally "a plaintiff must prove that the defendant intended that the false

statement be **material** to the Government's decision to pay or approve the false claim." a

defendant is not answerable for anything beyond the natural, ordinary, and reasonable

consequences of his conduct." *ibid.*

---

[33] $120,000 was lost through **inappropriate expenses**, Sentencing Transcript Page 90 Line 13-14.

### b) FERA Retroactively Amends FCA 2009

Subsequent to the government's Complaint of November 24, 2008, Congress enacted Public Law No: 111-21 Fraud Enforcement and Recovery Act of 2009 (FERA) on March 23, 2009. *Karron Declaration Exhibit 69, 12.* In an unusual effort to re-broaden the reach of the FCA, Congress attempted to make the FERA retroactive take effect as if enacted on **June 7, 2008**, and apply to all **claims** under the False Claims Act (31 U.S.C. 3729 *et seq.*) that are pending on or after that date;. The stated legislative intention was to overturn the ALLISON ruling of the Supreme Court. *Public Law No: 111-21, Section 4(f)(2). Karron Declaration Exhibit 137*

### c) FERA Retroactivity Unconstitutional

The Supreme Court Decision remanded *ALLISON 471 F. 3d.*back to the District Court[34], where Judge Rose[35] held that the retroactive application of amendments to the FCA set forth in FERA with punitive damages violated the *Ex. Post Facto* Clause of the clause 3 of Article I, section 9 of the U.S. Constitution. In this case the penalty sought at 42 X restitution is punitive nature, is so sever, so Draconian, as to reach into the Constitutional realm.

### d) FERA retroactivity Applies to Claims, Not Cases

The District Court on remand further found that FERA supported the its application to pending "claims", not pending "cases". Because the ALLISON defendants did not have any claims pending at the time of enactment into law or its retroactive effective date, the court

---

[34] Allison Engine Co. v. U. S. ex. rel. Sanders, No. 95-cv-970 6th Cir(2009)
[35] U. S. ex. rel. ROGER L. SANDERS, et al., -v- ALLISON ENGINE COMPANY, INC., et al.,, Case No. 1:95-cv-970 (U. S. DISTRICT COURT SOUTHERN DISTRICT OF OHIO WESTERN DIVISION AT DAYTON October 27, 2009).

determined that the FERA amended version of 31 U.S.C did not apply. *U.S. v. Aguillon*[36], and

*U.S. v. Science Applications International Corp*[37]  *Hopper v. Solvay Pharms*[38], (claims for

reimbursement pending on that date), *Ex. rel. Parato v. Unadilla Health*[39] similarly found the

FERA retroactivity clause applies to pending **claims**, not **cases**.

The Plaintiff was served with the Civil Complaint on this action on November 24, 2009,

and refers to allegedly false claims made in 2001-2002, some 9 years past. All references to 31

U.S.C. § 3729 refer to the version of the FCA in force at the time of the putative false **claim**(s),

not this **case**. U. S. v. KARRON Civil Complaint, 08 CV 10223 U. S. SDNY, November 24, 2008..

### e)  Retroactivity, Legally False from Kirk v. Schindler also false

One cannot automatically assume, even in the dim light of *U. S. ex. rel. Kirk v. Schindler*

*Elevator 601 F. 3d 94 (2d Cir. 2010)*  that the present case falls under the dark shadow of FERA.

Using the second circuits' analysis of liability under Mikes v. Straus, 274 F. 3d 687 -

Court of Appeals, 2nd Circuit 2001 the Kirk court found the Materiality element hinged on the

issues of FERA retroactivity

This case regards conduct from 1997 to 2004, and the government has not identified any

claims for payment pending in 2008. Alleged false claims must satisfy the Allison Engine

materiality standard which calls for non-statutory language finding of fraud.  In any event, they

must satisfy FERA or ALLISON, but not both. If the Plaintiff desires to argue its complaint

---

[36] U. S. v. Aguillon, 628 F.Supp.2d 542 Dist. Court, D. Delaware , June 24, 2009.
[37] U. S. v. Science Applications International Corp., 2009 WL 2929250, D.D.C. Sept. 14, 2009
[38] Hopper v. Solvay Pharms, 588 F.3d 1318, 1327 n.3, 2009 cert. pet'n filed, 78 U.S.L.W. 3531 (U.S. Mar. 3, 2010) (No. 09-1065);
[39] U. S. ex. rel. Parato v. Unadilla Health Care, No. 5:07-CV-76(HL), 2010 WL 146877, at * 4 n.4 (M.D. Ga.), 2010

under FERA, it must restate its claims in a new complaint using the post FERA FCA statute numbers explicitly, not *en passant* by footnote in the Plaintiffs Memorandum of Law.

*Kirk* also hinges on the issues of implied false certification is based on the express clauses of the applicable statute to deny payment for vendors not in compliance.  This stricture is simply not in place with the ATP and other statutes.  ATP simply does not cut off awardees for technical issues of non-compliance, they work with awardees to bring them into compliance. *Karron Declaration Exhibit 161* They hate to say no, they are always willing to work with awardees to fix problems, not impale them on it. That function seems to be for the OIG.

## f)  FCA Claims Disputed

The Plaintiff asserts that "...there is no dispute that the FCA claims here meet the threshold requirements of 31 U.S.C. § 3729." [40]. This is incorrect.  Additionally, there is no way 31 U.S.C § 3731(e) FCA Procedure Collateral Estoppel can be applied to "Same Transactions" if they are not identified in the criminal case.  The Defendant's conviction was based on events that occurred after the alleged claims were made and paid.  The conviction was based on intentionally misapplying amounts already received to categories of expenditure that were unallocable, incorrect, or unauthorized, as discussed in detail below.  See Plaintiff's *Rule 56.1 Statement, §§ 28-31.*

## g)  31 USCS § 3731 (e) FCA Statutory CE Procedure

The CE bar issue arises when the government moves for summary judgment. The statutory CE standard are typically more stringent than the application of civil CE without the

---

[40] Memorandum of Law In Support Of Plaintiff's Motion for Summary Judgment at 13

statutory standard of 'same transaction' in *ibid*. The typical case scenario is modeled by *U S. v.*

*Sazama,* 88 F. Supp.2d 1270 (D. Utah 2000) with these steps:

1) First the court discusses the factual background on the criminal conviction or plea.
2) The court then moves on to outline the criteria for granting summary judgment under Rule 56, *i.e.*, the typically the absence of any genuine issue of material fact.
3) Next, the court juxtaposes the factual predicate of the criminal FCA complaint's allegations to determine whether the "same transaction" is involved. *U S.v. Kanelos, 1994 WL 148655 (N.D. Ill. April 20, 1994)*
4) The court then concludes that the collateral estoppel bar has been triggered.
5) Summary judgment must be granted if the Defendant if estopped from denying all of the allegations of the FCA complaint.

U. S. v. Sazama *ibid* does not apply here because Sazama pled guilty to Medicaid fraud,

which is what the FCA combats.  Application of FCA collateral attack to a BEA finding of

misapplication of funds, not claims, clearly do not apply.

### h) The Mickman and Lamanna Limitation

The reach of FCA CE, however, is not without boundaries, recognized most prominently

in  U. S. v. Mickman, 1993 WL 541683 (E.D. Pa. Dec. 22, 1993), 52 F.3d 318 (1995) The government

argued that the nonjury findings of fact made by the district judge for sentencing purposes should

be included in the "essential elements" of the underlying offense to which the guilty plea was

entered. The FCA court rejected this interpretation:

> [T]he preclusive effect of Section 3731(d) of the False Claims Act with respect to guilty pleas extends only so far as the conduct described in the count or counts to which the guilty plea applies. Section 3731(d) **does not apply to conduct or counts alleged in the indictment** to which no plea of guilty or judgment of conviction is entered and to which the charges are dismissed."

Another example is U. S. v. Lamanna, 114 F. Supp. 2d 193 (E.D.N.Y. Sept. 26,

2000),where the government unsuccessfully argued that an additional 15 purportedly fraudulent

disability checks in addition to the check that served as the basis for the plea should be included within the reach of the collateral estoppel bar.  However, because the defendant was convicted of making a false statement on only one compensation form, summary judgment could not be granted as to the other 14 forms.

### i)  Liability Does Not Equal Damages

The False Claims Act Collateral Estoppel bar does not obviate the government obligation to bring forward proof of damages in the FCA action.

> "Thus, it is incumbent on the United States to come forward with evidence of the amount of damages to which it claims entitlement, and the fact that the issue of damages was not before the jury in the criminal trial does not preclude the government from introducing an affidavit in support of [its] motion." [41]

Conversely, even should the criminal sentencing court order restitution, that does not as a matter of law establish the extent of FCA damages that could be awarded in a later civil proceeding.  A finding of criminal restitution does not limit, cap, or set a floor for FCA damages.

This indicates that the two systems of calculation of damages are separate and independent. Therefore, it is incumbent in a FCA trial to establish its own finding of damages, and not rely exclusively, or independently on the criminal trial findings. This works against CE, in that CE would have to automatically find maximal damages and run into the Double Jeopardy Limit of damages.  In  U. S. v. *Heart Trace of Nashua*,[42]  defense counsel successfully argued that the government could not claim greater FCA single damages than it had admitted in sentencing stipulations regarding the amount of loss occasioned by the offenses underlying the conviction. The greater amount sought in the FCA case would have to be proved by the

---

[41] U. S. v. Nardone, 782 F. Supp. 996, 998 (M.D. Pa. 1990)
[42] *U. S. v. Heart Trace of Nashua, Inc.*, 2001 WL 274804 (D.N.H. Jan. 10, 2001)

government and could be contested by defendants.  Only the facts absolutely "material and necessary" to the criminal conviction are embraced within the FCA CE ban – all other facts have to be proven by the government at trial.[43]  In U.S. v. Emergency & Patrol Air Services, the defendant is *estopped* only from arguing facts related to the "**same transaction**" as was the basis for the criminal conviction[44].  That said, Seiffert v. Green found the purported criminal court finding must be "directly at issue and essential to the criminal judgment."[45]  Allegations to which the government seeks to apply the CE bar must be part of "the same transaction" as that recounted in the conviction[46].  If the criminal conviction is for the general crime of conspiracy, without a finding of specific actions taken in pursuance of the conspiracy, then CE can be invoked only for specific acts of conspiracy[47]

The Plaintiff cannot bring forward a schedule of individual criminal transactions proffered and accepted by the court in the criminal trial.  There are none.  The only evidence as to improper spending in project year 1 was GX114, and it does not point to any individual transaction. The Plaintiff's "56.1" Statement, Paragraph 30 Response and the Declaration of Dunlevy delve into a detailed analysis of GX114.  From the analysis we must raise significant questions as to the validity of the audit.

### j)  The Defendant's Conviction under 18 U.S.C. §666(a)(1)(A) [BEA]

---

[43] *U. S. v. Boutte*, 907 F. Supp. 239, 241 (E.D. Tex. 1995), *aff'd*, 108 F.3d 332 (5th Cir. 1997).
[44] U. S. v. Emergency & Patrol Air Services, Inc., 1988 WL 107576 (E.D. Pa. Oct. 13, 1988).
[45] Seiffert v. Green, 1987 WL 26670 (E.D. Pa. Dec. 8, 1987).
[46] U. S. v. Ford, 19 F.3d 20 (6th Cir. 1994).
[47] . U. S. ex rel. Miller v. Bill Harbert International Construction, Inc., 2007 WL 851857 (D.D.C. March 14, 2007)

While 18 § 666 [BEA] covers a wide swath of territory, the Defendant was convicted specifically under subsection (a)(1)(A) above, and specifically the clause that prohibits "intentional misappl[ication]" of funds[48].

Indeed, in its brief to the Second Circuit on the appeal from the criminal verdict[49], the Government specifically argued that fraud was no part of the elements of 18 U.S.C. § 666. The only relevant point, according to the prosecution, was whether she knew that the monies were applied incorrectly to categories of expenditure not authorized by the Government, even without intent to defraud, and even if used for otherwise legitimate purposes. Here is the pertinent portion of the argument on which the criminal prosecution was based:

### a) 2. Intent to Defraud Is Not An Element Of Section 666(a)(1)(A) …

> In contrast to the bank embezzlement statute, 18 U.S.C. § 656, which requires the Government to prove the additional element that "the defendant intended to injure or defraud the bank," see United States v. Docherty, 468 F.2d 989 (1972); Sand, Instr. 24-2, there is no legal authority of which the Government is aware — and none that Karron has cited — imposing an analogous specific intent-to-defraud element for Section 666(a)(1)(A).[50]

Thus, in the above section of the U.S. Criminal Appeal Brief, the Government argues that Karron's conviction under 18 U.S.C. § 666(a)(1)(A) BEA do not have as an element any intent to commit fraud. In addition, the Government also argued that Karron's conviction does not have as an element an improper purpose[51].

---

[48] Government's Rule 56.1 Statement, § 1.
[49] Karron Declaration Exhibit 68.t
[50] U.S. v. Karron, U. S. Court of Appeals For The Second Circuit, Brief for the U. S, No. 08-5287-Cr, "U.S. Criminal Appeal Brief (2009), Karron Declaration Ex 68, at 25.
[51] U. S. v. Urlacher, 979 F.2d at 938 "Otherwise Lawful purpose", Karron Declaration Exhibit 172

In U. S. v. Urlacher[52] the Court defined the term "intentional misapplication" to encompass misuse of federal funds "for otherwise legitimate purposes". The Court explained its reasoning as follows:

> b) **Section 666(a)(1)(A) prohibits embezzling, stealing, obtaining by fraud, converting, or intentionally misapplying funds. The first four prohibitions cover any possible taking of money for one's own use or benefit. Intentional misapplication, in order to avoid redundancy, must mean intentional misapplication for otherwise legitimate purposes[53].**

Thus, **the Government itself has acknowledged** that Karron's conviction under 18 U.S.C. § 666 was **not obtained on the basis of fraud or false statements**, but rather misapplication of funds received. The conviction does not mean that Karron made knowingly false statements. Rather, the most that can be said is that after Karron received money from the Government, she intentionally applied those funds to expenditures that she knew to be outside the budget or that she intentionally categorized those funds incorrectly. While the Government may attempt to prove that false statements were made, that proposition cannot be established by means of collateral estoppel based on the conviction alone.

Unlike its previous argument in the criminal case, where the Government argued that the only relevant question was whether funds were intentionally misapplied, the Government is now arguing that the criminal conviction under 18 U.S.C. §666 included a *scienter* requirement with regard to claims.

---

[52] U. S. v. Urlacher, 979 F.2d at 938
[53] U.S. Criminal Appeal Brief Karron Declaration Ex 68 at 32

The Government itself cites in its brief a case which demonstrates that FCA claims must demonstrate the element of *scienter*. [54].

There is an important distinction here between Karron's knowing that monies expended involved goods and services that had been incorrectly categorized, and Karron's knowledge of the falsity of her claims. The first, *i.e.*, knowledge that monies were incorrectly categorized, was a required element of the criminal offense under which Karron was convicted. The second, *i.e.*, knowledge that a claim was false, was not an element of the BEA offense, but is an element of an FCA suit. That difference creates a large gulf between the criminal verdict and the present lawsuit.

The Government is required to prove the element of *scienter* as to the claims that were not part of the criminal case. The Defendant disputes that the element of *scienter* as to the claims exists in this case, and is entitled to bring evidence to demonstrate the non-existence of that fact.

Significantly, in its Rule 56.1 Statement submitted in support of this motion, the Government nowhere makes specific reference to anything indicating that Karron did, in fact, have knowledge of the falsity of claims. Indeed, Benedict clearly knew what he meant by what he wrote when he exonerated Karron in submitting restated SF270's. *Karron Decl. Exh. 128.*

Rather, the Government's Rule 56.1 Statement states that expenditures are allegedly "personal," "unallowable, unallocable or [in excess of] budget limitations," and "unauthorized." Nowhere is there any statement that claims submitted by Karron to the Government for the

---

[54] U.S. ex. rel. Mikes v. Straus, 84 F.Supp.2d 427, 433 (S.D.N.Y. 1999) (professional negligence does not meet the *scienter* requirement, even though the Medicaid claims to the Government may have been medically unnecessary or improperly performed)

purpose of drawing down funds were false and that Karron knew them to be false.  With the

forensic proof that Karron had significant personal funding in play, Karron's funding of

overhead and otherwise necessary disallowed costs out of pocket does not imply

misappropriation, but responsible stewardship. *Dunlevy Decl.*

Point IV.     Monstrous Civil Penalties and Damages Unconstitutional

Even assuming *arguendo* that Karron is liable for damages, the full amount CASI

received from the ATP under the Cooperative Agreement is not the appropriate basis

> "The court ultimately arrived at the $120,000 amount by totaling categories of
> expenditures that did not appear on the approved budget, an alternative calculation
> proposed by the Government..." Prosecution Memorandum of Law at 9.

This implies that all other costs did appear on the 'budget'. How can the government be

damaged by its own court approved budget?

### 1.  A 42 times damages and punitive ratio

The summary judgment in this case, as demanded by the Plaintiff, would result in a

monumental civil fine, which, if left uncontested by a trial, would amount as much as 5 million

dollars and 'go to the [defendant's] grave'.  Given collapse of the Defendant's income earning

ability, this would amount would be uncollectable to the Government.  This is especially cruel

and unusual punishment without a deterrent effect; it has a chilling effect on creative researchers

seeking federal funding, the opposite of the intentions of the ATP statute. 15 § 278n..  A civil

punitive judgment of 5 million dollars on an already criminal judgment of 120 thousand dollars

restitution is a whopping 42 times increase.

2.  Double Jeopardy and the BEA and the FCA

U. S. v. Halper[55] raised the issue of Double Jeopardy in FCA collateral attacks after criminal convictions.  When does a monumental civil fine approach Constitutional borders of cruel and unusual punishment?

## The CAMPBELL Punitive The Single Digit Ratio Rule

In response to judges and juries which award high punitive damages verdicts, the Supreme Court of the United States has made several decisions which limit awards of punitive damages through the due process of law clauses of the Fifth and Fourteenth Amendments to the United States Constitution. In a number of cases, the Court has indicated that a 4:1 ratio between criminal (punitive and) compensatory damages is broad enough to lead to a finding of constitutional impropriety (The Single Digit Ratio Rule)and that any ratio of 10:1 or higher is almost certainly unconstitutional *BMW  v. Gore* [56] the Court ruled that punitive damages must be reasonable, as determined based on the degree of reprehensibility of the conduct, the ratio of punitive damages to compensatory damages, and any criminal or civil penalties applicable to the conduct. In CAMPBELL[57], the Court held that punitive damages may only be based on the acts of the defendants which harmed the plaintiffs.  In *Simon v. San Paolo* [58], the California Supreme Court addressed *Campbell* "[T]hat "few awards" significantly exceeding a [A] single-digit ratio will satisfy due process ."

[55] U. S. v. Halper, 490 U.S. 435, 448-49 (1989).143 Declaration of Karron Exhibit 189.
[56] BMW of North America, Inc. v. Gore (1996)
[57] STATE FARM MUT. AUTOMOBILE INS. CO.V. CAMPBELL (01-1289)  538 U.S. 408 (2003)P.3d
[58] Simon v. San Paolo U.S. Holding Co., Inc. (2005) 35 Cal. 4th 111182

### 3. Forensic Accounting does not support the Plaintiff's loss contention

What is the purpose of the Plaintiff's pursuit of this FCA collateral attack against the plaintiff? It is punitive or compensatory The defense never proffered forensic evidence to the contrary in a form suitable for countering GX114.

### 4. The TENNENBAUM precedent

Most recently *SONY v. TENNENBAUM (2010), see Karron Declaration Exhibit188.* the court accepted the Constitutional challenge to a monstrous jury award for the relatively minor crime of downloading songs from the internet.

### 5. Large Punitive Damages and Fines CASE LAW

In U.S. v. Bajakajian[59] the Supreme Court ruled that it was unconstitutional to take $357,144 from a person who failed to report his taking of more than $10,000 in U.S. currency out of the U.S. In what was the first case in which the Supreme Court ruled a fine violated the Excessive Fines Clause, the Court ruled that it was "grossly disproportional" to take all of the money which Bajakajian attempted to take out of the U.S. without reporting trying to do so. In describing what constituted "gross disproportionality," the Court could not find any guidance from the history of the Excessive Fines Clause and so relied on Cruel and Unusual Punishment Clause case law. The Supreme Court has used the "Evolving Standards of Decency" standard not only to say what punishments are inherently cruel, but also to say what punishments that are not inherently cruel are nevertheless cruelly disproportionate to the offense in question [60] The crime is not reprehensible. The damages are Draconian and do not serve the purpose of deterrence; that is the criminal courts job. *Ibid.*

---

[59] U. S. v. Bajakajian, 524 U.S. 321 (1998),
[60] TROP v. DULLES 356 U.S. 86 (1958)

Perhaps had the ATP program had known that Karron was going to be convicted of a felony, or that Karron was a Transsexual, perhaps they would have passed over her(then him) for the award to a 'more responsible and eligible' recipient. However, the standards of the ATP award not based on the awardee, but on the quality of the proposal. *ibid Ex. Group 24, Ex. 151.* Karron did not lie during the awardee vetting process. *Ibid Ex. 3*; ATP knew who (but not what) they were getting into bed with in this award.

Point V.   Other Issues Raised and Answered

    s)  **OMB Circulars advice to Agencies**

OMB Circulars A-21 and OMB Circular A-122 intentions are  " **Federal Government bear its fair share of total costs, determined in accordance with generally accepted accounting principles, … Agencies are not expected to place additional restrictions on individual items of cost. …., such cost sharing or matching shall not be accomplished through arbitrary limitations on individual cost elements by Federal agencies.**"

    t)  Revision of budget and program plans: 15 CFR §14.25

Permission is not required for many budget and program plans : 15 CFR § 14.25 (4) "the prior approval requirements described in paragraph (e) of this section are automatically waived (i.e., **recipients need not obtain such prior approvals**) ." "(f) The recipient may not transfer funds among direct cost categories  [if the] cumulative amount of such transfers exceeds or is expected to exceed 10 % of the **total Federal and non-Federal funds authorized … This does not prohibit the recipient from requesting Grants Officer approval for revisions to the budget… (g) … do not require prior approval.**" … . **"revision is still under consideration at the end of 30 calendar days, the Grants Officer shall inform the recipient in writing of**

**the date when the recipient may expect the decision".** ATP does not care about the budget

except to be assured that the public money it is entrusted with is spent wisely, not wasted, and

for the purpose intended, not slavish adherence to budgets just to expend money with no benefit

to anyone.

### u) ATP was tacitly or minimally responsive.

The ATP project management were required to respond to budget amendment requests

in 30 days. If the ATP representative was unable to respond in 30 days then it she was obligated

by under 15 CFR §14.25(m) to make written commitment for a definitive answer date. At no

point during the grant was a written response made on this topic. At all times, the ATP program

management, to their credit, was working toward find a way to say 'Yes'. Because of this lack of

an affirmative negative, and given Karron's overfunding of the project, Karron had in fact

justification to continue. The only risk would be that Karron would have to pay for some

activities instead of ATP; the justification was there from the program management proud of

how 'un bureaucratic' an agency it was. *Karron Declaration Exhibit 141, 148.*

## 1. Cooperative Agreement requires CASI Substantial Involvement

a) Kickoff Memo from Orthwein *(Karron Declaration Exhibit 5)* shows early significant

involvement.

*Karron Declaration Exhibit 1-6* shows, quarterly technical reports were submitted and

accepted. These reports not only detail the technical progress and scientific difficulties, but also

the contractual and business issues faced by the CASI startup. Ex. 14 (ATP Proposal Ex. 14

Instructions, 2001), has a cover instruction page that contains this disclaimer:

We recognize that unexpected events occur frequently in R&D projects, and that budgets may need to be changed as a project proceeds. **Don't fear that by providing a multi-year budget beyond the first year, you will be locked into those details**. ATP allows a certain amount of flexibility in moving funds from one line item to another as circumstances change. ...[Emphasis Added]

Lide, in direct examination apparently incorrectly answers the question of which Rule rules: A. "Regardless of whether they are allowable under the federal cost principles, the following are unallowable under ATP:" Q. What does the first of that phrase mean, "Regardless of whether they are allowable under the federal cost principles."? A. It means what's stated here overrules any other federal cost principles. *Trial Transcript Pages 232 et seq. Lines 16-et seq.* But the federal cost principles say that they cannot be arbitrarily overruled; they rule, not the agencies. *See above.*

Point VI.      No grounds for Summary Judgment[61]

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)* [emphasis removed].  A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).First National Bank of Arizona v. Cities Service Co.391 U. S. 253,391 U. S. 289(1968)To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, (1986)

---

[61] Brody, Steven G. and Chow, Gary K., November 16, 2009 New York Law Journal. Unlikely Source May Be Raising Summary Judgment Bar High Court's three pleadings rulings begin to impact

A District Court may not resolve disputed factual issues on Summary Judgment if the nonmoving party presents more than a "Scintilla of Evidence". *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).* In this case, the *pro se* Defendant Karron has refuted or shown moot 31 of 31 of the movants "56.1" statements of material fact. The Defendant presents *Table 1*, and the *Dunlevy Declaration Exhibits* provides comprehensive forensic analysis.  The moving party cannot now show conclusively that there is no genuine issue of material fact; except by a finding of fact at trial.

The Plaintiff has failed to show an undisputed qualifying fraud transaction , the *sine qua non* for a FCA conviction.  There was no fraud transaction proven in the Defendant's BEA criminal conviction.  This lack of a fraud requirement was sustained on appeal. U. S. v. Karron, On Appeal, Brief for the United States(2009) at Point 1(B)(2).  Summary Judgment cannot be granted in this case because the Fraudulent Transaction standard required for a FCA summary conviction is not established[62] Allison Engine Co. v. U. S. ex. rel.Sanders  (No. 07-214) 471 F. 3d 610,(vacated and remanded). . At the very least, a jury is required to establish knowing fraud transaction *de novo*.

### 1)  No Uncontested Material Issues for Partial Summary Judgment.

Should the Defendant's "56.1" Counterstatement and Opposing Memorandum of Law leave any alleged genuine undisputed issues of material undisputed, the court may invoke FRCP 56(d) "Case Not Fully Adjudicated on the Motion", (1) "Establishing Facts" and (2) "Establishing Liability".  All 6 Claims are addressed above, and all 31 Items in the Movants "56.1" statement are answered.  Because the Defendant has presented full panoply of counter

---

[62] Small, Dan;( October 2009). Compliance & Ethics Professional. False Claims Act: Wave of the Future. www.corporatecompliance.org, Page 30 ff.

evidence, and argument, there do not exist gaps of agreed no material dispute, into which a partial summary judgment may be driven.

(1) With respect to "Establishing Facts", The Defendant has rebutted, with copious specific citation to evidence admissible at trial, each and every "material fact[s] [are not] genuinely at issue" of those raised by the Movant. Rule 56(d)(1) advises "The court should so determine by examining the pleadings and evidence and **by interrogating the attorneys**. The court "should then issue an order specifying what facts [if any remain] — including items of damages or other relief — are not genuinely at issue" The surviving facts so specified must be treated as established in the action" [Emphasis and editorialization added]. Therefore, it is extremely important that the Non Movant not leave any material facts at issue uncontested, and those that are contested with references to evidence that would be admitted at trial. This effectively means that the Non Movant case-in-chief must be successfully argued such that the court is convinced that there exists a significant probability of success at a trial.

(2) With respect to "Establishing Liability", The Defendant is in a situation whereby they are estopped from arguing no liability, yet in (1) above the Defendant will introduce convincing material evidence, necessary for evaluating damages, yet also revealing Plain Error in the Criminal Trial.

The auditors conspired to make materially false audit in ignoring Karron's contribution.

The government's audits were copied from the CASI hostile audit, ignoring basic principles of Auditing: Completeness, Independence, and OMB Cost Principles. The defendant's tax paid salary, turned back to the project, was willfully ignored, by refusing to trace

funds[63]. The Defendant's criminal liability was for spending funds that were her property with which to spend as she pleased, obviating all of the testimony that the Defendant willfully ignored ATP spending rules: because she was spending her own money to pay program and non-program bills.

Inventory of Facts, Claims, Refutations of Facts, Arguments to Claims

The Movants complaint raised 6 claims in its initial complain. The Movant's "56.1" statement raised 31 items with issues of alleged uncontested fact that the Defendant has assiduously rebutted with references to evidence admissible at trial. Complaint 6 claims are argued in 6 points of argument.

The Defendant has raised significant issue with the government's evidence used to convict the Defendant in the Criminal Trial with *prima facie* evidence that the audit numbers alleging misappropriation just don't add up, are made up, and otherwise just in themselves mistakes of fact by the Plaintiff. *Karron Declaration Exhibit 36.* The only fact found by the jury was some amount of funds greater than five thousand dollars, unspecified in detail, was misapplied. *U. S. v. Karron (2008) Amended Judgment in a Criminal Case. Karron Declaration Exhibit 65*

4) Conclusion; No grounds for Civil or FCA Statutory Estoppel, Full or Part Summary Judgment.
   (1) No grounds for Common Law Estoppel;

   (a)  no elements of fraud to *estop* by *res judicata*.

   ii)  There are no grounds for FCA Statutory Collateral Estoppel;

---

[63] Smith, Lionel D.; (1997)The law of tracing CLARENDON PRESS • OXFORD
http://www.questia.com/read/55471201

(1) no 'Same Transactions'

iii) Summary Judgment cannot be granted;

    (1) no common elements from prior trial.

    (2) all elements require findings of fact and adjudication.

        (a) No partial Summary Judgment;

iv) 42x penalty is second punishment;

    (1) Is there a new crime from same events?

v) New trial required to evaluate benefit of bargain losses and damages.

    (1) Will prove they are negative.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------

UNITED STATES OF AMERICA,

Plaintiff,

08 Civ. 10223 (NRB) (DFE)

- v. —

AFFIRMATION OF SERVICE

DANIEL B. KARRON,

Defendant.
-------------------------------------------------------------

I, Deborah Anne Dunlevy, declare under penalty of perjury that I have served a
copy of the attached

1. MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
   MOTION FOR SUMMARY JUDGEMENT
2. OPPOSING 56.1 STATEMENT OF MATERIAL FACTS
3. Declaration of Deborah Anne Dunlevy
4. Declaration of D B Karron

upon

Michael J. Byars,  Assistant United States Attorney,

whose address is

86 Chambers Street, 3rd Floor

New York, New York 10007

By  Hand on this day

8/23/10

Dated: New York, NY

Signed

Deborah Anne Dunlevy

31-18 Broadway, 2R

Long Island City, NY 11106

8/23/10

1



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

# MEMORANDUM
*Pro Se* Office

**To:**      The Honorable Naomi Reice Buchwald, USDJ

**From:**    K. Johnson, *Pro Se* Office, x0177

**Date:**    August 25, 2010

**Re:**      <u>**United States of America v. Karron,**</u> **No. 08 Civ. 10223(NRB)**

The attached document, which was received by this Office on <u>August 23, 2010</u> has been submitted to the Court for filing.   The document is deficient as indicated below. Instead of forwarding the document to the docketing unit, I am forwarding it to you for your consideration. <u>See</u> Fed. R. Civ. P. 5(d)(2)(B), (4).  Please return this memorandum with the attached papers to this Office, indicating at the bottom what action should be taken.

( **X** )   No original signature.

(   )   No affirmation of service/proof of service.

(   )   The request is in the form of a letter.

(   )   Other:_____
_____
_____

RECEIVED
AUG 27 2010
PRO SE OFFICE

( ✗ )  ACCEPT FOR FILING                    (   )   RETURN TO *PRO SE* LITIGANT

United States District Judge   8/26/10

Comments:
_____
_____
_____
_____
_____

United States Magistrate Judge

Dated: