**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x

UNITED STATES OF AMERICA, :

              Plaintiff, :

             - v - :

DANIEL B. KARRON, :

              Defendant. :

                                    08 Civ. 10223 (NRB) (DFE)

------------------------------------------------------------------ x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone:  (212) 637-2793
Facsimile:  (212) 637-2717
Email:  michael.byars@usdoj.gov

MICHAEL J. BYARS
Assistant United States Attorney
    – Of Counsel –

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ................................................................................................................2

   I.   Karron Is Liable Under the FCA Based on Collateral Estoppel .........................................2

   II. Contrary to Karron's Claim, the Government's Requested Damages Award Does Not Violate Her Constitutional Rights........................................................................................7

CONCLUSION ..............................................................................................................9

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Allison Engine Co. v. United States ex rel. Sanders*,
    128 S. Ct. 2123 (2008)............................................................................................5

*Cook County v. United States ex rel. Chandler*,
    538 U.S. 119 (2003)..............................................................................................8

*Hudson v. United States*,
    522 U.S. 93 (1997)................................................................................................8

*Morse v. Commissioner*,
    419 F.3d 829 (8th Cir. 2005) ...............................................................................7

*Morse Diesel Int'l, Inc. v. United States*,
    79 Fed. Cl. 116 (2007) .........................................................................................8

*United States ex rel. Kirk v. Schindler Elevator Corp.*,
    601 F.3d 94 (2d Cir. 2010)...................................................................................5

*United States ex rel. Loughren v. Unum Group*,
    613 F.3d 300 (1st Cir. 2010) ................................................................................5

*United States v. Barnette*,
    10 F.3d 1553 (11th Cir. 1994) .........................................................................7, 8

*United States v. Brekke*,
    97 F.3d 1043 (8th Cir. 1996) ...............................................................................8

*United States v. Halper*,
    490 U.S. 435 (1989).............................................................................................8

*United States v. Mills*,
    140 F.3d 630 (6th Cir. 1998) ...............................................................................4

**Statutes and Rules**

Fed. R. Evid. 702 ...........................................................................................................2

18 U.S.C. § 666...........................................................................................................4, 6

31 U.S.C. § 3729(a)(1)................................................................................................3, 5

31 U.S.C. § 3729(a)(1)(B) ..........................................................................................3, 5

31 U.S.C. § 3729(a)(2)....................................................................................................5

31 U.S.C. § 3729(b)(1)(B) ..............................................................................................5

Fraud Enforcement and Recovery Act of 2009, Pub. L. 111-21 ....................................................5

**Regulations**

15 C.F.R. § 14.52 ..........................................................................................................................3

The Government, by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this reply memorandum of law in further support of its Motion and in response to defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (the "Opposition" or "Opp'n").[1]

## PRELIMINARY STATEMENT

The Government's motion comprises two straightforward issues.  *First*, the motion invokes the FCA's estoppel provision and common law estoppel to preclude Karron from contesting her liability for civil damages under the FCA due to her criminal conviction.  Karron was convicted of intentionally misapplying project funds to purposes that she knew were unauthorized under the terms and conditions of the Cooperative Agreement.  Inherent in that jury verdict is a finding that her sworn certifications of compliance with those terms and conditions were knowingly false.  *Second*, the uncontested facts support an award under the FCA of treble damages based on the amount of the project funding received, plus penalties.  Contrary to Karron's claim, she is not entitled to an offset for a purported "benefit" to the Government from her work.

Plaintiff's Rule 56.1 statement demonstrates the extent of the false statements made by Karron in furtherance of her improper uses of project funds.  Karron has failed to contest substantially all of, or to cite to admissible evidence that contradicts, plaintiff's Rule 56.1 statement.  *See* 56.1 Counterstatement ¶¶ 1-20; 22-31.  The bulk of Karron's opposition, which has been amended to comprise over 1,500 pages and reference segments of a three-plus-hour videotape, is irrelevant to this motion.  Karron and, in particular, declarant Deborah A. Dunlevy principally seek to relitigate the issue of whether Karron intentionally misapplied funds, an issue

---

[1] Unless otherwise noted, terms capitalized herein bear the meanings given in the Government's June 18, 2010 Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment (the "Opening Brief" or "Opening Br.").

already decided by a criminal jury.  *See, e.g.*, Opp'n 10 ("Defendant's main evidence is forensic analysis of hard numbers taken from the criminal trial"); 56.1 Counterstatement at 2 (purporting to list the "most basic fiscal questions" to be answered through "ground truth" forensic reconstruction); Declaration of Deborah A. Dunlevy ("Dunlevy Declaration" or "Dunlevy Decl.") 3 ¶ 1, 8 ¶ 31 (purporting to provide the Court with a "comprehensive forensic reconstruction" accounting for how "every penny" was spent on the CASI project).[2]  Thus, the facts in plaintiff's 56.1 statement must be deemed admitted.

Karron is therefore civilly liable for treble damages of $4,036,500 in treble damages and penalties of between $110,000 and $220,000 at the Court's discretion pursuant to the FCA, subject to a reduction for any restitution payments in the criminal case.

## ARGUMENT

## I.   KARRON IS LIABLE UNDER THE FCA BASED ON COLLATERAL ESTOPPEL

Karron is estopped from contesting her civil liability under the FCA and common law. She cannot deny the finding in her criminal trial, beyond a reasonable doubt, that she "without authority intentionally misapplied . . . money under the control of CASI knowing that such use [was] unauthorized or unjustifiable or wrongful . . . ."  Trial Tr. at 1351:14-20 (jury charge). This finding was essential to the criminal judgment of conviction and must be given effect here. *See* Opening Br. 12-16.  It precludes Karron from contesting the falsity of her certifications, in financial reports required by and submitted to the Government, that "all outlays" or "all disbursements" were made in compliance with, *inter alia*, the conditions of the Cooperative

---

[2]  Dunlevy admits that she is not a fact witness and has no personal knowledge of the CASI Project.  *See* Dunlevy Decl. ¶ 6 ("I was not involved with Karron or Computer Aided Surgery or CASI in any way during the NIST ATP project period, or afterward until sometime in 2004.").  With this reply, the Government is submitting a pre-motion letter pursuant to paragraph 2.A of the Court's individual practices seeking leave to file a motion to strike the Dunlevy Declaration for non-compliance with Rule 702 of the Federal Rules of Evidence.

Agreement or award documents.  *See* 56.1 Statement ¶ 22; *see also* Chukran Decl. ¶¶ 4, 8, 12 &

Exs. B, C, D.  As FCA liability can arise from a "false" claim, *see* 31 U.S.C. § 3729(a)(1)

(2003); *id.* § 3729(a)(1)(B), there is no requirement that the criminal jury have found fraud, as

Karron alleges, *see* Opp'n 16.

Karron's attempts to contest her civil liability by attacking the financial reports attached

to the Chukran Declaration are unavailing.  With respect to the Federal Cash Transactions

Reports, Karron argues that these forms are not material because in July 2002 the ATP excused

CASI from having to file that form, *see* 56.1 Counterstatement ¶ 22, but she cannot dispute that

the Forms SF272 were false when they were submitted during the period prior to July 2002,

when they were required.  With respect to the Financial Status Reports, Karron complains that

the Government included Forms SF269A, rather than Forms SF269, *see* 56.1 Counterstatement

¶ 22, but does not contest that she filed both types of forms.[3]  Moreover, the Forms SF269A that

were originally submitted (and certified) inaccurately claimed a cost-share, as is evidenced by

the new versions submitted after the project was shut down, each of which listed the cost-share

as zero.  *Compare* Chukran Ex. D (line 10(b) on each Form 269A) *with* GX 40A, 41A, 42A, 43A

(line 10(i) on each Form 269).[4]  With respect to the Request for Advance or Reimbursement,

Karron poses only a limited challenge to the first Form SF270, arguing that the certification can

be false only if there has been prior spending, but admits that she sought this first payment as a

cash advance for reimbursement of unapproved costs.  *See* 56.1 Counterstatement ¶ 24.

---

[3] In certain cases, Form SF269A may be used instead of Form SF269.  *See* 15 C.F.R.
§ 14.52.  By restricting its submission to only the four Forms SF269A, the Government seeks
civil damages only once for the same type of financial report for the same time period.

[4] In her opposition papers, Karron submits two different revisions to those revisions,
somehow adding in cost-share information.  *See* 56.1 Counterstatement at 35, table 1 (reflecting
a total "Recipient share of outlays" for year one of $29,493); Karron Decl. Exhibit Group 2
pages 39 to 46 of 217 (reflecting a total "Recipient share of outlays" for year one of $78,204).

Moreover, the parties' submissions on this motion further establish the falsity of these certifications.  Karron does not contest the testimony that she diverted $75,000 of the initial $150,000 draw-down for the payment of personal debts, *see* 56.1 Statement ¶ 28, but argues only that the $75,000 amount was a *bona fide* salary advance, *see* 56.1 Counterstatement ¶ 28.  The evidence she cites, however, does not address the issue of a salary advance.[5]  *See* GX114; Sentencing Tr. 7:15-18.  Evidence at the criminal trial established that Karron incurred over $120,000 in unauthorized expenses for non-budgeted categories during year one of the project. 56.1 Statement ¶ 30 (citing GX114).  While Karron admits that this evidence served as the basis for her $120,000 criminal restitution amount (and concedes that this amount corresponds to "inappropriate expenses," Opp'n 22 n.33), she contests GX114's accuracy by referencing only the 860 pages of exhibits to the Dunleavy Declaration, *see* 56.1 Counterstatement ¶ 30, and fails to cite any specific admissible evidence showing that these expenditures, *see* GX114, were authorized or within the approved budget.  Karron's admission that her very first report included "out of budget" costs, 56.1 Counterstatement ¶ 24, runs counter to the Cooperative Agreement's explicit requirement of prior written approval for the creation of "new budget categories," GX2 at 3 ¶ 9.  Evidence at the criminal trial also showed that Karron had failed to enter into the promised subcontract with CUNY, even though that subcontract (representing 25% of the federal funding for year one and more than 20% of the total federal funding) was included in Karron's July 6, 2001 ATP submission.  *See* 56.1 Statement ¶¶ 11, 31; GX10.  That submission was a

---

[5]  Defendant's reliance on *United States v. Mills*, *see* 56.1 Counterstatement ¶ 28 n.21, is unavailing.  In *Mills*, the Sixth Circuit held that § 666's *bona fide* salary exception applied because there was no proof that certain salaries paid were not properly earned in the usual course of business; thus, the FCA claims failed.  140 F.3d 630, 633-34 (6th Cir. 1998).  Here, by contrast, the Government has come forward with admissible evidence establishing that the payments to Karron were improper because they were not used for their approved purpose, *see, e.g.*, 56.1 Statement ¶ 22, and Karron does not point to admissible evidence that the payment was authorized or within the budget.

4

material part of the Cooperative Agreement:  "All research shall be conducted in accordance with[, *inter alia*,] the Recipient's proposal dated 07/06/01."  GX13 ¶ 5.  Karron argues that the subcontract was only a proposal and her decision not to enter into it was properly within her discretion, *see* 56.1 Counterstatement ¶ 11, but points to no admissible evidence that the subcontract budget item was removed.

Nor can Karron contest her knowledge of the falsity of her certifications.  It is undisputable that Karron "knowingly present[ed], or caus[ed] to be presented, to an officer or employee of the United States Government a false or fraudulent claim for payment or approval" and thus is liable under former § 3729(a)(1).  *United States ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 113 (2d Cir. 2010) (internal quotation marks and alterations omitted). Section 3729(a)(1)(B), as amended, which applies here under *Kirk*,[6] establishes Karron's liability for "knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim."  *Id.* (internal quotation marks and alterations omitted). "[N]o proof of specific intent to defraud" is required to state a claim under the FCA.  31 U.S.C. § 3729(b)(1)(B).

---

[6] *Kirk* interprets FERA's amendments retroactively to apply to all FCA cases pending on or after June 7, 2008.  *See Kirk*, 601 F.3d at 113 (applying current § 3729(a)(1)(B) in case filed before, and still pending on, June 7, 2008).  As Karron notes, Opp'n 23-24, some courts outside the Second Circuit have taken the view that FERA's amendments apply only where the FCA action concerns *claims* for government funds that were pending on June 7, 2008.  *See United States ex rel. Loughren v. Unum Group*, 613 F.3d 300, ____, n.7, 2010 WL 2951175, at *5 n.7 (1st Cir. 2010) (collecting cases).  However, even if the Second Circuit had adopted the more restrictive view of FERA retroactivity, Karron still would be liable under former § 3729(a)(2) because her false certifications were made directly to the Government and not to a subcontractor. *See* 31 U.S.C. § 3729(a)(2) (2006), *amended by* FERA, Pub. L. 111-21, 123 Stat. 1617 (2009). There is thus no question that the Government seeks to hold Karron "answerable [only] for . . . the natural, ordinary and reasonable consequences of [her] conduct."  *Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 2123, 2130 (2008) (internal quotation marks omitted). *See also Loughren*, 613 F.3d at ____ n.7, 2010 WL 2951175, at *5 n.7  ("There is no question in this case that [defendant] caused the statements at issue to be made directly to the government; thus *Allison Engine*'s intent requirement and its abrogation by FERA, are not relevant here").

Karron has no support for her bald assertion that her knowledge of the falsity of the financial reports is not established by the jury's finding that she knew she was misapplying CASI funds.  Her assertion is based solely on her claim that the financial statements in question contain technical errors that "obviate anyone 'knowing' anything at all."  Opp'n 9.

By contrast, the Government has shown that Karron knew that the financial reports, and her certifications thereof, were false.  *See* 56.1 Statement ¶ 25.  Gurfein testified that Karron had directed him to "just submit numbers [on the quarterly financial statements] that will make it work" and not "raise any red flags," even though "that money was not spent on the grant."  Trial Tr. 664:6-14.  These numbers were "the aggregate of what was in the monthly applications for . . . the various progress payments" and did not reflect actual expenses.  *Id.* 663:22-664:3.  Gurfein also testified that Karron admitted using $75,000 of the first $150,000 for unapproved personal expenses.  *See* 56.1 Statement ¶ 28.  While Karron argues that this expenditure, if considered *bona fide* salary, would not be part of a § 666 violation, she does not point to admissible evidence supporting any proper use of the $75,000.  *See* 56.1 Counterstatement ¶¶ 28-29 (claiming only that she had "tacit permission" from the agency and referencing trial testimony premised on proper accounting of expenditures according to the approved budget).  *See also* GX2 at 3 ¶ 9 (requiring prior written approval for new budget categories).  Moreover, plaintiff provided admissible evidence of at least $120,000 in unauthorized expenditures in non-budgeted categories during year one of the project.  *See* 56.1 Statement ¶ 30.  Karron responds only that this evidence was improperly considered at the criminal trial, and does not specify any admissible evidence establishing that her payment of $60,000 in back rent to herself, $9,832 in fringe benefits, $11,248 in capital improvements, $5,019 in cleaning expenses and $43,592 in other unauthorized categories was authorized or budgeted.  *See* 56.1 Counterstatement ¶ 30; *but*

*see* Opp'n 28 (acknowledging that GX 114 was "evidence as to improper spending in project year 1").

## II.   CONTRARY TO KARRON'S CLAIM, THE GOVERNMENT'S REQUESTED DAMAGES AWARD DOES NOT VIOLATE HER CONSTITUTIONAL RIGHTS

Nor is there any support for Karron's argument that damages of $4,036,500 – *i.e.*, based on trebling the $1,345,500 in federal funds admittedly drawn down, *see* 56.1 Counterstatement ¶¶ 9, 21, 27 – and civil fines of from $110,000 to $220,000[7] would violate the Constitution because this would dwarf the amount of her criminal restitution, Opp'n 10.  Contrary to Karron's claim, the analysis of whether a damages amount violates the Constitution depends on the amount of the loss, not on the amount of the restitution.

As Karron recognizes, *see* Opp'n 27 ("A finding of criminal restitution does not limit, cap, or set a floor for FCA damages."), the amount of restitution set forth in a criminal judgment of conviction does not limit the damages and penalties that can be claimed by the Government in a subsequent civil case.  *See, e.g.*, *Morse v. Commissioner*, 419 F.3d 829, 834 (8th Cir. 2005); *United States v. Barnette*, 10 F.3d 1553, 1556 (11th Cir. 1994).  Rather, as the Government already has noted, "[t]he starting point for the calculation of the initial damages amount (*i.e.*, prior to trebling) is the total amount fraudulently obtained."  Opening Br. 18.  The parties are in agreement here that the total amount received by Karron from the Government was $1,345,500. *See* 56.1 Counterstatement ¶¶ 9, 21, 27.  Although under certain circumstances, an offset may be appropriate to reflect the Government's receipt of the "benefit of its bargain," those circumstances are not present here.  *See* Opening Br. 18-24.

---

[7] As noted in the Opening Brief, the Court has discretion to determine the appropriate penalty amount within the range of $5,500 to $11,000 per false statement based on such factors as the seriousness of the misconduct, the scienter of the defendant and the amount of damages.  The maximum statutory civil penalty may be awarded where, as here, the defendant's fraudulent acts were intentional, occurred on more than one occasion and resulted in significant damages to the Government.  *See* Opening Br. 25.

Courts have determined that the FCA's treble damages provision is consistent with the Constitution, on the ground, among others, that such a damages ceiling evinces a remedial purpose. *See, e.g.*, *Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 130-32 & n.9 (2003); *United States v. Brekke*, 97 F.3d 1043, 1048 (8th Cir. 1996); *Morse Diesel Int'l, Inc. v. United States*, 79 Fed. Cl. 116, 126-28 (2007). After the addition of penalties of from $110,000 to $220,000 above the treble damages amount, the maximum total requested is only 3.16 times the amount drawn down. This is within accepted constitutional limits. *See, e.g.*, *Barnette*, 10 F.3d at 1559-60 ("[A] 3.2 to 1 ratio simply does not lack a rational relation to the Government's loss. Instead, such a ratio is very close to a fixed penalty roughly proportionate to the damage caused plus double damages." (internal quotation marks, alterations and citations omitted)). Karron's invocation of *United States v. Halper*, 490 U.S. 435, 448-49 (1989), is unavailing because that decision was abrogated by *Hudson v. United States*, 522 U.S. 93, 100-01 (1997), and, in any event, the *Halper* Court's concern arose because plaintiff's civil liability in that case was driven by the relatively high number of false statements, rather than the trebling of actual damages, as here, *see Hudson*, 522 U.S. at 100 ("Given Halper's 65 separate violations of the Act, he appeared to be liable for a penalty of $130,000, despite the fact he actually defrauded the Government of less than $600."). Karron's reliance on non-FCA case law dealing with damages or fine calculations that are unmoored to a treble damages ceiling is inapposite. *See* Opp'n 33-34.

**CONCLUSION**

For the reasons set forth above and in the Government's opening brief, the Government's motion for summary judgment should be granted as to Karron's liability for treble damages of $4,036,500 and a total civil penalty of between $110,000 and $220,000, subject to a reduction in the amount of restitution paid.

Dated:  New York, New York
        September 17, 2010

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney

                                By:  s/ *Michael J. Byars*                        
                                        MICHAEL J. BYARS
                                        Assistant United States Attorney
                                        Telephone:  (212) 637-2793
                                        Facsimile:  (212) 637-2717
                                        Email:  michael.byars@usdoj.gov