UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
UNITED STATES OF AMERICA,

                        Plaintiff,

       - against -

DANIEL B. KARRON,

                       Defendant.
----------------------------------------X

**MEMORANDUM AND ORDER**

08 CV 10223 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    The United States of America ("Government") brings this civil action against defendant Daniel B. Karron ("Karron") to recover damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq. Before us is the Government's motion for summary judgment on both liability and damages. In that motion, the Government contends that Karron's related conviction under 18 U.S.C. § 666 for intentionally misapplying federal funds precludes Karron from contesting liability in this civil action.

    For the reasons stated herein, the Government's motion is granted in part and denied in part.

<u>BACKGROUND</u>

**I.   Factual Background**

At all times relevant hereto, Karron was the President and Chief Technical Officer of Computer Aided Surgery, Inc. ("CASI").[1]  (R. 56.1 ¶ 3.)   In July and August of 2001, Karron submitted a proposal on behalf of CASI to the National Institute of Standards and Technology ("NIST"), an agency housed within the United States Department of Commerce.   (R. 56.1 ¶ 5.) Specifically, CASI applied for funds through NIST's Advanced Technology Program ("ATP"), a program that was designed to facilitate research and development on high-risk, high-reward, emerging technologies.   (R. 56.1 ¶ 5; <u>see also</u> 15 C.F.R. § 295.1(a).)

CASI's proposal was entitled "Anatomic Computer Modeling for Precise and Accurate Therapies."   (R. 56.1 ¶ 5.)   In the proposal, Karron stated that CASI would develop computer applications that would "rapidly generate encrypted, precise, accurate, and variable resolution three dimensional tiled models

---

[1] The background is derived from the Government's Local Rule 56.1 Statement ("R. 56.1") and the Declaration of Melinda S. Chukran in Support of Plaintiff's Motion for Summary Judgment ("Chukran Decl."), each dated June 18, 2010.   We note that Karron submitted a statement in opposition to the Government's Local Rule 56.1 Statement, in which she concludes that many facts are "moot" or irrelevant.   However, Karron fails to specifically controvert those facts in a way that is meaningful for the purpose of this motion.   Additionally, Karron fails to comply with Local Rule 56.1, which provides that "each statement controverting any statement of material fact[] must be followed by citation to evidence which would be admissible . . . as required by Federal Rule of Civil Procedure 56(e)."   Local Rule 56.1(d). Thus, unless otherwise noted, the facts recited herein are deemed admitted. <u>See</u> Local Rule 56.1(c).

applicable for diverse applications [such] as radiation therapy, surgical planning, intraoperative guidance, rapid manufacturing of prosthesis" and other uses.  (R. 56.1 ¶¶ 5-7.)

Karron also included an estimated budget in the CASI proposal.  (R. 56.1 ¶ 8.)  In that budget, Karron projected that CASI's costs would total $2,110,500 over a three-year period, of which $2,000,000 would come from ATP.  (R. 56.1 ¶¶ 8-10.) Karron also specified in the budget that CASI would enter into a subcontract with the City University of New York's Institute for Software Design and Development ("CUNY").  (R. 56.1 ¶¶ 11-12.) By virtue of this subcontract, CUNY faculty, visiting scientists, and graduate students would work on the CASI project. (R. 56.1 ¶ 12.)

In October 2001, ATP notified Karron that her proposal had been approved.  (R. 56.1 ¶ 16.)  Thereafter, Karron signed a so-called cooperative agreement, which provided that: ATP would grant CASI $2,000,000 in federal funds over three years; CASI would gain exclusive rights to any intellectual property developed under the cooperative agreement; and CASI would share certain costs during the life of the project.  (R. 56.1 ¶¶ 17-21.)

The cooperative agreement also called for CASI to comply with certain federal regulations.  (R. 56.1 ¶¶ 17-18.)  These regulations specified, <u>inter alia</u>, the actions that CASI was

required to take in connection with its use of ATP funds. First, to access the funds, CASI was obligated to submit a "Request for Advance or Reimbursement" on Form SF-270. (R. 56.1 ¶ 17; Chukran Decl. ¶ 3 (citing 15 C.F.R. § 14.22).) Second, after receiving the ATP funds, CASI was required to submit a "Federal Cash Transactions Report" on Form SF-272 to account for its use of the funds.[2] (R. 56.1 ¶ 17; Chukran Decl. ¶ 7 (citing 15 C.F.R. § 14.52).) And third, CASI was obligated to provide a "Financial Status Report" on Form SF-269 or SF-269A on a quarterly basis. (R. 56.1 ¶¶ 17-18; Chukran Decl. ¶ 11 (citing 15 C.F.R. § 14.52).)

Each of the above-mentioned forms required CASI's "Authorized Certifying Official" to certify that the statements on the form were accurate and that CASI had complied with the terms of the cooperative agreement.[3] (Chukran Decl. ¶¶ 4, 8, 12.) From October 2001 through July 2003, Karron signed at

---

[2] In July 2002, NIST and Karron amended the cooperative agreement. That amendment eliminated the requirements that Karron file: a Form SF-270 in advance of receiving ATP funds; and a Form SF-272 following her receipt of ATP funds. (Chukran Decl. ¶¶ 5, 10.)

[3] Specifically, Form SF-270 requires an Authorized Certifying Official to make the following certification: "I certify that to the best of my knowledge and belief the data on the reverse are correct and that all outlays were made in accordance with the grant conditions or other agreement and that payment is due and has not been previously requested." (Chukran Decl. ¶ 4.) Form SF-272 requires the Authorized Certifying Official to state: "I certify to the best of my knowledge and belief that this report is true in all respects and that all disbursements have been made for the purpose and conditions of the grant or agreement." (Chukran Decl. ¶ 8.) Finally, the quarterly status reports on Form SF-269 or SF-269A require the Authorized Certifying Official to state: "I certify to the best of my knowledge and belief that this report is correct and complete and that all outlays and unliquidated obligations are for the purposes set forth in the award documents." (Chukran Decl. ¶ 12.)

least twenty such forms as CASI's "Authorized Certifying Official." (R. 56.1 ¶ 24.)

ATP conducted a limited audit of CASI in June 2003. (R. 56.1 ¶ 26.) As a result, ATP learned that Karron and CASI failed to comply with the cost share, drew down funds exceeding the amount to which CASI was entitled, failed to enter into a subcontract with CUNY, and made impermissible expenditures. (R. 56.1 ¶¶ 26-31.) On June 27, 2003, ATP suspended its cooperative agreement with CASI. (R. 56.1 ¶ 26.)

## II.  Procedural Background

### A.  Criminal Case

In June 2007, Karron was indicted for allegedly violating 18 U.S.C. § 666. The indictment charged, consistent with the language of the statute, that Karron knowingly misapplied more than $5,000 of funds in the care, custody, and control of CASI, a company that received more than $10,000 in federal funds during a one-year period. See United States v. Karron, No. 07 Cr. 541 (RPP) (S.D.N.Y. filed June 13, 2007) (dkt. no. 1). Nearly a year later, the Government filed a second superseding indictment. In that indictment, the Government again included a single count under 18 U.S.C. § 666 but also included a forfeiture allegation. Id. (dkt. no. 44).

A jury trial commenced on June 2, 2008 and continued for eight days.  Id. (dkt. nos. 50-51).  During the trial, the Government introduced evidence that:

- Karron used $75,000 of the initial disbursement of ATP funds to pay for her personal debts. Karron took this action despite warnings from her business manager that such use was unauthorized.  (R. 56.1 ¶ 28; Trial Tr. 1271:23-1272:8.)

- Karron and her business manager originally had to co-sign all expenditures over $250. However, within one week of receiving ATP funds, Karron stripped her business manager of signing authority and vested herself with sole signing authority.  (Trial Tr. 1271:9-24.)

- Karron set up CASI's business location in her own apartment and then spent approximately $60,000 of ATP funds on rent.  Again, Karron took this action despite receiving frequent warnings that such use was unauthorized.  (R. 56.1 ¶¶ 30-31; Trial Tr. 1266:23-1267:23, 1272:9-1273:13, 1318:8-1319:16.)

- During the project's first year, Karron spent approximately $16,000 of ATP funds on utility

bills and approximately $2,000 of ATP funds on meals. Yet again, Karron made such expenditures despite repeated warnings that these were not authorized uses. (R. 56.1 ¶ 30; Trial Tr. 1267:25-1269:9, 1320:14-18.)

- Karron used more than $5,000 in ATP funds to compensate her cleaning lady. Karron also spent more than $40,000 of ATP funds on other categories of unauthorized expenses. The items that Karron purchased with federal funds included a blender, a GPS navigation system, a digital camera, a drill set, and a dust buster. (R. 56.1 ¶ 30; Trial Tr. 1273:13-21, 1320:19-1321:25.)

- According to the testimony of Karron's business manager, Karron directed him to create false financial reports that did not reflect actual expenditures. Karron signed these very reports and submitted them to ATP. (R. 56.1 ¶ 25.)

On June 11, 2008, at the conclusion of the trial, the court instructed the jury to determine whether the Government proved beyond a reasonable doubt that:

> First, at the time alleged in the indictment, the defendant was an agent of Computer Aided Surgery, Inc., or CASI;

> Second, in a one-year period, CASI received a federal grant in excess of $10,000; Third, during that one-year period, the defendant without authority intentionally misapplied the grant money; Fourth, the misapplied grant money was under the care, custody, or control of CASI; Fifth, the value of the money intentionally misapplied by defendant was at least $5,000.

(Trial Tr. 1350:5-15.)   The court further instructed the jury that:

> [t]o intentionally misapply money means to use money under the control of CASI knowing that such use is unauthorized or unjustifiable or wrongful.   Intentional misapplication includes the wrongful use of money for a purpose the defendant knew was unauthorized, even if such use benefited CASI in some way. . . . Misapplication of money, however, does not apply to bona fide salary, wages, fringe benefits, or other compensation paid, or expenses paid or reimbursed, in the usual course of business. . . . As I said, the government must prove beyond a reasonable doubt that the defendant acted intentionally in misapplying grant money.   To find that the defendant acted intentionally, you must be satisfied beyond a reasonable doubt that the defendant acted deliberately and purposefully.   That is, the defendant's misapplication must have been the product of the defendant's conscious objective to spend the money for an unauthorized purpose, rather than the product of a mistake or accident or some other innocent reason.

(Trial Tr. 1351:16-1352:11 (emphasis added).)   Later that day, the jury returned a guilty verdict against Karron on Count One of the second superseding indictment.   (R. 56.1 ¶ 1.)

In October 2008, the court sentenced Karron to seven and one-half months of imprisonment, to be followed by three years of post-release supervision (which included a period of monitored home confinement).   The court also ordered Karron to pay $120,000 in restitution.   See United States v. Karron, No. 07 Cr. 541 (RPP) (dkt. nos. 68-69, 71).

Karron appealed her conviction to the Court of Appeals for the Second Circuit.   On appeal, Karron argued that: (1) the district court erred when it instructed the jury to determine whether Karron "intentionally misapplied funds," rather than instructing the jury that "intent to defraud" is an element of the crime; and (2) 18 U.S.C. § 666 was void for vagueness.   The Second Circuit rejected Karron's arguments and affirmed her conviction by summary order dated October 7, 2009.   United States v. Karron, 348 F. App'x 632, 633 (2d Cir. 2009).

### B.   Civil Case

On November 24, 2008, the Government commenced this civil action against Karron.   The complaint includes two causes of action under the FCA and four state law causes of action for conversion, unjust enrichment, fraud, and payment made under mistake of fact.[4]

---

[4] The complaint, which was filed in November 2008, includes one claim under § 3729(a)(1) of the FCA and another claim under § 3729(a)(2) of the FCA.   In 2009, Congress passed the Fraud Enforcement and Recovery Act of 2009 ("FERA"), which amended and renumbered subsections 3729(a)(1), (a)(2), and (a)(3).   See generally United States ex rel. Kirk v. Schindler Elevator

Following Karron's release from custody, the Government filed the instant motion for summary judgment. As noted above, the Government seeks a judgment: (1) holding Karron liable under the FCA; (2) awarding damages equal to three times the amount of funds that Karron drew down from ATP; and (3) awarding civil penalties for twenty false statements allegedly made by Karron when she obtained these funds.

## DISCUSSION

### I.   Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Anderson v. Liberty

---

Corp., 601 F.3d 94, 113 (2d Cir.), cert. granted, 131 S. Ct. 63 (2010). The amendment to § 3729(a)(1) does not apply retroactively. However, the amendment to § 3729(a)(2), which has been redesignated as 3729(a)(1)(B), applies retroactively to "claims" pending on or after June 7, 2008. Id.

In construing the retroactivity provision, the Second Circuit has concluded that FERA applies to all legal claims (i.e., cases) pending on or after June 7, 2008. See id. Although other circuits have reached an alternative conclusion -- namely, that the FERA amendments apply to claims for payment made to the government on or after that date -- we are bound by Schindler Elevator. Thus, because this action was pending after June 7, 2008, it involves the application of former § 3729(a)(1) and current § 3729(a)(1)(B). We reject Karron's arguments that the application of the FERA amendments in this case is unconstitutional. Nevertheless, for reasons discussed herein, the outcome of the case would be the same under either version of the statute.

Lobby, Inc., 477 U.S. 242, 247-48 (1986)); see also Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.

On a motion for summary judgment, the initial burden rests with the moving party to make a prima facie showing that no issues of material fact exist for trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 330-31 (1986).  Once this showing is made, "[t]o defeat summary judgment, the non-movant must produce specific facts" to rebut the movant's showing and to establish that there are material issues of fact requiring trial.  Wright v. Coughlin, 132 F.3d 133, 137 (2d Cir. 1998) (citing Celotex, 477 U.S. at 322).  In determining whether a genuine issue of material fact exists, a court must view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor.  See Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010).

## II.  Liability

The Government argues that the doctrine of collateral estoppel precludes Karron from denying liability for her false statements.  Specifically, the Government argues that two related doctrines apply: first, that Karron is precluded from denying liability under the federal common law principle of

collateral estoppel; and second, that Karron is precluded from denying liability under the provision of the FCA that specifically prohibits an individual convicted of fraud or false statements from denying liability for false statements in a subsequent civil action. In opposition, Karron argues that these doctrines do not apply and that summary judgment should be denied.

The preclusive effect of a criminal conviction on future civil proceedings is well established. See, e.g., Allen v. McCurry, 449 U.S. 90, 104 n.22 (1980); Emich Motors Corp. v. Gen. Motors Corp., 340 U.S. 558, 568-69 (1951). Indeed, "[a] criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case." New York v. Julius Nasso Concrete Corp., 202 F.3d 82, 86 (2d Cir. 2000); see also Stichting ter behartiging van de belangen van oudaandeelhouders in het kapitaal van Saybolt Int'l B.V. v. Schreiber, 327 F.3d 173, 180 (2d Cir. 2003). Under the federal common law principle:

> [a] judgment in a prior proceeding bars a party and its privies from relitigating an issue if, but only if: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in

> the prior proceeding, and (4) the issue
> previously litigated was necessary to
> support a valid and final judgment on the
> merits.

Stichting, 327 F.3d at 180 n.2 (citing NLRB v. Thalbo Corp., 171 F.3d 102, 109 (2d Cir. 1999)).

For claims arising under the FCA, an analogous principle of collateral estoppel is codified at 31 U.S.C. § 3731(e). Pursuant to this provision:

> a final judgment rendered in favor of the
> United States in any criminal proceeding
> charging fraud or false statements, whether
> upon a verdict after trial or upon a plea of
> guilty or nolo contendere, shall estop the
> defendant from denying the essential
> elements of the offense in any action which
> involves the same transaction as in the
> criminal proceeding and which is brought
> under subsection (a) or (b) of section 3730.

31 U.S.C. § 3731(e).[5]   Thus, central to the collateral estoppel analysis is an examination of what the jury found in the criminal case and what a fact-finder must determine in this civil action.

As described above, the essential elements of the offense of which Karron was convicted are: (1) Karron was an agent of CASI; (2) in a one-year period, CASI received a federal grant in excess of $10,000; (3) Karron without authority intentionally

---

[5] For the sake of clarity, we note that we attach no significance to the fact that the Government brings its FCA claims under § 3729, rather than under § 3730.   Section 3729 defines violations under the FCA and § 3730 enables either the Government or a private plaintiff to bring a civil action for a violation of § 3729.   See 31 U.S.C. §§ 3729, 3730.

misapplied the grant money; (4) the misapplied grant money was under the care, custody, or control of CASI; and (5) the value of the money that Karron intentionally misapplied was at least $5,000. Moreover, as the court instructed the jury, the "misapplication must have been the product of the defendant's conscious objective to spend the money for an unauthorized purpose, rather than the product of a mistake or accident or some other innocent reason."

As noted above, the Government has brought claims under former § 3729(a)(1) and § 3729(a)(2), the latter of which was subsequently redesignated as § 3729(a)(1)(B). Under former § 3729(a)(1), the Government must establish that Karron:

> (1) made a claim, (2) to the United States Government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury.

See United States ex rel. Mikes v. Strauss, 274 F.3d 687, 695 (2d Cir. 2001); see also 31 U.S.C. § 3729(a)(1) (2003) (liability attaches under the FCA where a person "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval"). Under current § 3729(a)(1)(B), the Government must establish that Karron "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim." Id.

§ 3729(a)(1)(B).  "Material" is statutorily defined as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."  Id. § 3729(b)(4).

We agree with the Government that Karron's prior criminal conviction precludes her from denying the essential elements of both of these civil causes of action.

Turning first to statutory estoppel, Karron was convicted following a jury trial and her conviction is now final.  See United States v. Karron, 348 F. App'x 632 (2d Cir. 2009), cert. denied, 130 S. Ct. 1555 (Feb. 22, 2010).  Additionally, the present civil action and the prior criminal action plainly stem from the same conduct -- namely, Karron's drawing down government funds based on false information, using the funds for unauthorized purposes, and falsely accounting for her use of the funds.[6]

---

[6] During oral argument, Karron first argued that statutory estoppel should not apply because the Government failed to establish that the civil and criminal cases involve the same "transaction." Specifically, Karron contends that the criminal case focused on individual checks and whether the specific expenditure was authorized, whereas the civil case has focused on forms submitted to the Government. Karron has not directed us to any case law supporting her narrow construction of the term "transaction." Because we are not bound to do so, we decline to adopt Karron's definition of "transaction," which would make that term coextensive with the definition of a claim. Instead, we construe that term to require a showing that the criminal and civil cases involve the same underlying facts. See, e.g., United States v. Sriram, No. 00 Civ. 4988, 2008 WL 516306, at *4-5 (N. D. Ill. Feb. 26, 2008) (statutory estoppel proper where the civil action involved the "same course of conduct" and overlapping "specific factual matters" as the prior criminal case); United States v. Irizarry-Colon, No. 05 Civ. 1607 (JAF), 2006 U.S. Dist. LEXIS 38850, at *40-41 (D.P.R. June 9, 2006) (statutory estoppel proper where the "civil complaint is based on the same allegations that served as the basis for [the defendants'] convictions"). As noted above, the criminal and civil cases against Karron plainly involve the same underlying facts.

Accordingly, we turn to the claim under former § 3729(a)(1). Three of the elements that the Government must establish cannot be disputed: first, Karron plainly made multiple claims; second, she made those claims to the United States Government; and third, those claims sought payment from the federal treasury. (See, e.g., Chukran Decl. Exs. B-D.) Thus, the only elements of § 3729(a)(1) that even merit discussion are the elements of the falsity of the statement and knowledge of such falsity.

After reviewing the trial transcript and the jury instructions from the criminal case, it is clear that the jury's verdict is more than sufficient to establish liability on these elements. Specifically, the jury found that Karron intentionally misapplied the grant, that it was Karron's conscious objective to do so, and that Karron's actions did not result from mistake or other non-culpable conduct. Additionally, Karron was required to certify that her use of the ATP funds was proper before gaining access to the funds and again after the expenditures were made. As a result, the jury's finding that Karron's misuse was intentional and not a product of mistake specifically precludes Karron from contending that she was not aware that her certifications were false. Moreover, Karron does not dispute that her statements to the Government were false. However, even assuming that Karron were to now

argue that her statements to the Government were true, the jury's verdict would preclude such an argument.[7]   Thus, we conclude that Karron is statutorily estopped from contesting her liability in connection with the first FCA cause of action.[8]

In addition, we find that Karron is statutorily estopped from contesting liability in connection with the second FCA cause of action.   See 31 U.S.C. § 3729(a)(1)(B) (imposing liability for "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim.").   For the reasons discussed above, we conclude that Karron is estopped from denying that she made a false statement or that she did so with the requisite knowledge. Likewise, we conclude that the facts necessary to the judgment in the criminal trial establish that Karron's statements had a

---

[7] Because Karron is proceeding pro se, this Court must "read [her] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).   We note that although Karron does not assert that her statements are true, she does maintain that the statements must be fraudulent and that she lacked intent to defraud.   As we address herein, the FCA does not require proof of intent to defraud.

[8] This conclusion is consistent with the familiar principle that a court that reviews a criminal defendant's post-conviction challenge to the sufficiency of the evidence must view the evidence in the light most favorable to the government.   See, e.g., United States v. Nieves, 354 F. App'x 547, 553 (2d Cir. 2009) ("Because the task of choosing among competing, permissible inferences is for the [jury and] not for the reviewing court, we are required to review the evidence in the light most favorable to the government, and to resolve all issues of credibility in favor of the jury's verdict.") (internal citations and quotations omitted, alteration in original); United States v. Gaskin, 364 F.3d 438, 459 (2d Cir. 2004) ("As we have repeatedly observed, a defendant raising an appellate challenge to the sufficiency of the evidence supporting a conviction faces a 'heavy burden,' because we must review the evidence in the light most favorable to the government, drawing all reasonable inferences in its favor.").

"natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."   31 U.S.C. § 3729(b)(4).   Here, ATP promptly suspended CASI's funding following a June 2004 audit that revealed CASI and Karron's misuse of the ATP funds.   Clearly, had Karron told the truth about the manner in which the funds were being used, ATP would not have remitted additional monies to CASI.   Accordingly, although the Second Circuit has not yet defined the precise contours of materiality under the FCA, see United States ex rel. Kirk v. Schindler Elevator Corp., 601 F.3d 94, 116-17 (2d Cir. 2010), we conclude that Karron's false certifications were material and that Karron is statutorily estopped from denying liability in connection with the second FCA claim.

Additionally, the criteria for estoppel under federal common law are plainly satisfied for both of the FCA claims: the criminal and civil cases both presented the same issues of Karron's misuse of government funds and the falsity of her submissions to the Government; Karron had a full and fair opportunity to litigate the relevant issues in the criminal action, when she was represented by counsel; and the issues relevant to the civil action were actually litigated, actually decided, and were necessary to support the jury's verdict. Thus, we likewise conclude that Karron's conviction "forecloses all questions relevant to civil liability" under the general

doctrine of collateral estoppel.  See United States v. Diamond, 657 F. Supp. 1204, 1205 (S.D.N.Y. 1987).

Karron raises a number of arguments in opposition to the Government's motion.  First, Karron argues that her statements were not knowingly false but that the forms were "fraught with uncaught technical errors, and other mistakes . . . ." (Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("P. Mem.") at 9.)  However, this argument is necessarily foreclosed by the verdict because the jury was charged that, in order to convict, "[Karron's] misapplication must have been the product of [her] conscious objective to spend the money for an unauthorized purpose, rather than the product of a mistake or accident or some other innocent reason."

Second, Karron argues that any misstatements were harmless because Karron contributed funds to CASI from her after-tax salary.  (P. Mem. at 14-15.)  We decline to address this argument because the jury was specifically charged that criminal liability for the misapplication of funds does not apply to bona fide wages, salary, or other benefits.  Moreover, this argument is more properly construed as a challenge to damages, and for the reasons discussed in Section III-A, infra, whether Karron contributed her own funds to CASI does not bear on the proper damages calculation.

Third, Karron contends that estoppel is unwarranted because the FCA and common law fraud claims require proof of intent to defraud and her conviction did not require any such proof. (P. Mem. 15-19, 28-32.) However, the common law fraud claim is not presently before us and the FCA claims require no proof of intent to defraud. See 31 U.S.C. § 3729(b)(1)(B) ("For purposes of this section . . . the terms "knowing" and "knowingly" . . . require no proof of specific intent to defraud.").[9]

---

[9] During oral argument, Karron repeatedly argued that the Supreme Court of the United States recently held that liability under the FCA requires proof of intent to defraud. See Allison Engine Co., Inc. v. United States ex rel. Sanders, 553 U.S. 662 (2008). Karron contends that, applying such a standard, summary judgment would be improper because her criminal conviction did not turn on proof of intent to defraud. We reject Karron's argument for three principal reasons. First, nowhere in Allison Engine did the Supreme Court hold that liability under the FCA requires proof of intent to defraud. Rather, the Court held that, under § 3729(a)(2) and § 3729(a)(3), a plaintiff was required to show that a defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim. 553 U.S. at 665. Moreover, the Supreme Court specifically reconciled its holding with the provision of the FCA that provides that "no proof of specific intent to defraud is required." See Allison Engine, 553 U.S. at 672 n.2 (citing 31 U.S.C. § 3729(b)); see also Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson, 130 S. Ct. 1396, 1415 n.7 (2010) (Sotomayor, J., dissenting) (noting that the 1986 amendments to the FCA expressly eliminated the need for specific proof of intent to defraud). Second, FERA overruled the Supreme Court's holding in Allison Engine and eliminated the requirement that a defendant intend a statement to be material. See S. Rep. No. 111-10, at 12 (2009), available at 2009 WL 787872, at *11. As a result, we need not apply Allison Engine to this case. Finally, even assuming the pre-amendment version of the statute and Allison Engine were to apply, we agree with the Government that Karron nevertheless would be estopped from denying liability. The prior version of § 3729(a)(2) imposed liability on any person who "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government . . ." 31 U.S.C. § 3729(a)(2) (2003). For the reasons noted above, we conclude that the jury's verdict establishes each of the elements of such a claim. Additionally, the fact that the jury concluded that it was Karron's conscious objective to misuse ATP funds, coupled with the requirement that she certify that her use of the ATP funds was proper, satisfies Allison Engine's materiality requirement. Moreover, even assuming summary judgment were not proper on the second FCA

Fourth, Karron argues that any false statements were "mooted" by the fact that ATP later excused CASI from certain filing requirements. However, there is simply no principled reason to conclude that Karron's false statements to the Government were rendered accurate because of ATP's later amendment of the cooperative agreement.

Finally, Karron devotes much of her memorandum of law and supporting affidavits to the argument that she properly used and accounted for every dollar of ATP funds. However, the jury verdict precludes Karron from relitigating this issue as well.

Accordingly, for the reasons stated herein, we conclude that Karron's prior conviction is entitled to preclusive effect and that entry of summary judgment in favor of the Government is proper.[10]

---

claim, Allison Engine does not apply to § 3729(a)(1) and therefore our conclusion that the Government is entitled to summary judgment on that claim is unaffected by this analysis.

[10] See, e.g., United States ex rel. Bunk v. Birkart Globistics GmbH & Co., No. 1:02 Civ. 1168 (AJT/TRJ), 1:07 Civ. 1198 (AJT/TRJ), 2010 WL 4688977, at *2 (E.D. Va. Nov. 10, 2010) (noting the court's earlier, unpublished decision granting the Government's motion for summary judgment on an FCA claim based on the preclusive effect of a guilty plea to conspiracy to defraud the United States and conspiracy to restrain trade in violation of the Sherman Antitrust Act); United States v. Miller, No. 08-743-JJB-SCR, 2009 WL 943514, at *2 (M.D. La. Apr. 7, 2009) (granting the Government's motion for summary judgment on an FCA claim based on the preclusive effect of a guilty plea to wire fraud); United States v. Khan, No. 03-74300, 2008 WL 2915096, at *2 (E.D. Mich. July 22, 2008) (granting the Government's motion for summary judgment on an FCA claim based on the preclusive effect of a guilty plea to health care fraud); United States v. Davis, No. 05-393-EBA, 2008 WL 1735167, at *3-4 (E.D. Ky. Apr. 11, 2008) (granting the Government's motion for summary judgment on an FCA claim based on the preclusive effect of a conviction for health care fraud); United States v. Sriram, No. 00 Civ. 4988, 2008 WL 516306, at *4-5 (N. D. Ill. Feb. 26, 2008) (granting Government's

### III. Damages

#### A.  Treble Damages

Pursuant to § 3729(a), a person who violates the FCA is liable for "3 times the amount of damages which the Government sustains because of the act of that person."  31 U.S.C. § 3729(a).  The Government argues that Karron is liable for three times the amount that CASI received from ATP -- or three times $1,345,500 -- less any amount that Karron has paid or will pay to the Government in restitution.[11]  Karron argues that the Government is entitled to a more limited recovery because CASI met various milestones and provided six technical reports to ATP during the life of the project.

In computing actual damages, the Supreme Court of the United States has held that "[t]he Government's actual damages are equal to the difference between the market value of the [items] it received and retained and the market value that the [items] would have had if they had been of the specified quality."  <u>United States v. Bornstein</u>, 423 U.S. 303, 317 n.13 (1976).  However, where the Government has not received assets with an ascertainable value, a number of circuits have held that the above measure of damages does not govern.  According to these courts, the proper measure of damages in that context --

---

motion for summary judgment on FCA claims based on preclusive effect of a guilty plea to mail fraud, tax fraud, and healthcare fraud).

[11] Neither party disputes that CASI received $1,345,500 from ATP.

prior to trebling -- is the full amount of the grant or amount received by the defendant.  *See, e.g.*, *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 472-73 (5th Cir. 2009) (affirming award of damages based on full amount of Government grant without offset); *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008) (affirming award of damages based on total amount that defendant received from Government without offset); *United States v. Mackby*, 339 F.3d 1013, 1018-19 (9th Cir. 2003) (rejecting damages offset where the Government had received no asset of ascertainable value), *cert. denied*, 541 U.S. 936 (2004); *United States v. TDC Mgmt. Corp., Inc.*, 288 F.3d 421, 427-28 (D.C. Cir. 2002) (same).

The courts that have directly addressed this issue have reasoned that when a grant is provided to a disqualified participant, the government loses all benefit of its bargain. For example, in *Longhi*, the Fifth Circuit stated that:

> [t]he contracts entered into between the government and the Defendants did not produce a tangible benefit to the [government].  These were not, for example, standard procurement contracts where the government ordered a specific product or good.  The end product did not belong to the [government].  Instead, the purpose of the [Small Business Innovation Research] grant program was to enable small businesses to . . . commercially market their products. The Government's benefit of the bargain was to award money to eligible deserving small businesses.  The [government's] intangible benefit of providing an "eligible deserving"

> business with the grants was lost as a
> result of the Defendants' fraud.

575 F.3d at 473; see also TDC Mgmt., 288 F.3d at 428 ("Once [defendant] deviated from its contracted role as impartial ombudsman by seeking a financial stake in joint ventures with private investors and by charging fees for the provision of material assistance to minority entrepreneurs, the district court then could properly find that the Program no longer had any value to the government.").

Although the Second Circuit has not directly addressed this issue, a number of courts in this Circuit have adopted the above reasoning. See United States ex rel. Feldman v. Van Gorp, No. 03 Civ. 8135 (WHP), 2010 WL 1948592, at *2 (S.D.N.Y. May 3, 2010) (denying defendant's motion for reconsideration in an FCA action and noting that the fact-finder "may properly conclude that the measure of damages is the total amount the government paid"); United States ex rel. Antidiscrimination Ctr. of Metro New York, Inc. v. Westchester County, No. 06 Civ. 2860 (DLC), 2009 WL 1108517, *2-3 (S.D.N.Y. Apr. 24, 2009) (granting plaintiff's motion in limine in an FCA action and precluding defendant from arguing to the jury that plaintiff's damages should be reduced by the "benefit" defendant conferred on the government); United States ex rel. Resnick v. Weill Med. Coll., 04 Civ. 3088 (WHP), 2009 WL 637137, at *3 (S.D.N.Y. Mar. 5,

2009) (approving settlement in an FCA action and noting that "substantial risks" to continuing the action include the risk that defendant will be exposed to damages based on the whole value of the grant).

We agree that Karron cannot establish that the Government received any ascertainable benefit from its relationship with CASI. Even assuming that CASI in fact met various milestones and provided reports to the Government, such actions yielded no tangible benefit to the Government. This point is underscored by the fact that CASI, not the Government, retained exclusive rights to any technology developed under the cooperative agreement. Likewise, if CASI and Karron develop a successful product in the future, they, not the Government, will retain the benefit. Accordingly, we grant this portion of the Government's motion for summary judgment on damages and conclude that the proper damage award is three times $1,345,500 -- or $4,036,500 -- less any amount that Karron has paid or will pay to the Government in restitution.[12]

---

[12] In opposition, Karron raises a number of challenges to the imposition of a damages award, including that the damages sought would violate the Double Jeopardy Clause of the Fifth Amendment, the Excessive Fines Clause of the Eighth Amendment, and the Due Process Clause of the Fifth Amendment. We reject each of these arguments. As a threshold matter, we note that the Supreme Court of the United States has squarely held that treble damages under the FCA serve both compensatory and punitive objectives. Cook County v. United States ex rel. Chandler, 538 U.S. 119, 130-33 (2003). The Court further reasoned that "[t]here is no question that some liability beyond the amount of the fraud is usually necessary to compensate the Government completely for the costs, delays, and inconveniences occasioned by fraudulent claims." Id. at 130-31 (costs to be compensated include the amount of fraud,

### B.   Civil Penalties

Liability under the FCA also triggers the imposition of civil penalties.   See 31 U.S.C. § 3729(a) (a person liable under the FCA "is liable to the United States Government for a civil

---

the costs of detection, and the expense of investigation) (internal citations and quotations omitted). Thus, the Court concluded that "[t]reble damages certainly do not equate with classic punitive damages, which leaves the jury with open-ended discretion over the amount . . ." Id. at 132.

In this context, we address Karron's challenges. First, we find Karron's Double Jeopardy challenge to be unfounded. Such an analysis turns on whether the legislature intended the penalty to be criminal or civil in nature. Here, damages imposed under the FCA have a legitimate compensatory component and we remain unconvinced that the damages are "so punitive in form and effect as to render them criminal despite Congress' intent to the contrary." Hudson v. United States, 522 U.S. 93, 103-05 (1997); see also Rogan, 517 F.3d at 453-54 (rejecting Double Jeopardy challenge); United States v. LaManna, 114 F. Supp. 2d 193, 197-98 (W.D.N.Y. 2000) (same). Second, we reject Karron's Excessive Fines Clause argument. It is well-settled that punitive damages do not constitute "fines" for the purpose of an Eighth Amendment analysis, Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 259-60 (1989), and, as discussed above, treble damages under the FCA are distinct from traditional punitive damages. Chandler, 538 U.S. at 130. Thus, it follows that a damages award in this action would not run afoul of the Excessive Fines Clause. See Rogan, 517 F.3d at 453-54 (rejecting challenge under the Excessive Fines Clause); United States v. Inc. Vill. of Island Park, No. 90 Civ. 992 (ILG), 2008 WL 4790724, at *6 (E.D.N.Y. Nov. 3, 2008) (same). Third, we reject Karron's argument that the damages imposed would violate the Due Process Clause of the Fifth Amendment. The statute is clear that courts must impose both civil penalties and treble damages for violations of the FCA. See 31 U.S.C. § 3729(a)(1). Additionally, we are not aware of a successful due process challenge to the FCA's scheme of damages, which has been in place since Congress amended the FCA in 1986 to "facilitat[e] enforcement generally." See Graham County, 130 S. Ct. at 1415 n.7 (Sotomayor, J., dissenting); see also Rogan, 517 F.3d at 454 (rejecting due process challenge). Moreover, because we decline to impose civil penalties in connection with 19 of the 20 claims at this stage of the case, the total damage award at present is just over three times actual damages, which is not "grossly excessive" under State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418-25 (2003). Furthermore, even if the Court imposed the maximum civil penalty for the remaining 19 claims, the additional penalties would not change the damages award in a way that would trigger due process concerns. Finally, although we agree with the Government that any damage award imposed would be well within constitutional limits, we comprehend Karron's concern about the imposition of additional penalties and therefore encourage the Government to consider whether it is necessary to further pursue civil penalties.

penalty of not less than $[5,500] and not more than $[11,000]"); 28 C.F.R. § 85.3(a)(9) (adjusting penalties for inflation).

The Government argues that Karron is subject to penalties for each false report or certification that she made to the Government.   The Government further asserts that Karron submitted "at least twenty false statements to the ATP," including nine Requests for Advance or Reimbursement on Form SF-270, seven Federal Cash Transactions Reports on Form SF-272, and four false Financial Status Reports on Form SF-269A.   Karron argues that some of the documents are duplicative or are revisions of prior submissions and thus penalties should not be imposed for each of the twenty documents.

Our concern is more fundamental.  We are not persuaded that summary judgment is proper at this stage on the issue of civil penalties because the Government has failed to specify the precise aspect of each of the twenty documents that is false. To clarify, the Government has established that Karron made false statements as a general matter and has unquestionably established at least one false statement.[13]  And it is certainly plausible that each of twenty documents contains a false

---

[13] Specifically, on Form SF-272, dated December 19, 2001, Karron accounted for her use of the first $150,000 that ATP disbursed to CASI. (Chukran Decl. Ex. C.)   On that form, Karron stated that $150,000 has been disbursed at the beginning of the period, that the entire sum has been used, and certified that "this report is true in all respects and that all disbursements have been made for the purpose and conditions of the grant or agreement." (Id.) However, the evidence at the criminal trial plainly established that Karron used $75,000 of this very disbursement for unauthorized personal expenses.

statement or certification.  However, the Government has yet to establish that its position with respect to each document is not subject to genuine dispute.

Accordingly, we impose a civil penalty of $5,500 for the false claim discussed herein and otherwise deny the Government's motion for summary judgment with respect to the imposition of civil penalties.

## CONCLUSION

For the foregoing reasons, the motion (docket no. 17) is granted in part and denied in part.  Additionally, based on the Government's statement at oral argument that a finding for the Government on the FCA claims would eliminate the need to address the pending state law claims, we dismiss the remaining state law claims.

Within two weeks, the Government shall advise the Court in writing about its proposed course of action regarding its request for civil penalties.  If the Government determines not to pursue its claims for additional civil penalties, it shall submit a judgment on notice.

Dated:     New York, New York
           March 22, 2011

                                        NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE


Copies of the foregoing Order have been mailed on this date to
the following:

**Attorneys for Plaintiff**
Michael J. Byars
United States Attorney's Office
Southern District of New York
86 Chambers Street
New York, NY 10007

**Defendant**
D.B. Karron
348 E. Fulton St.
Long Beach, New York 11561